**[J-42-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 63 MAP 2015 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court dated October 8, 2014 at No. 396 |
| | : | MDA 2014, affirming the Judgment of |
| v. | : | Sentence of the Court of Common |
| | : | Pleas of Dauphin County, Criminal |
| | : | Division, at No. CP-22-CR-0001297- |
| KHIRI ARTER, | : | 2012, dated February 4, 2014 |
| | : | |
| Appellant | : | ARGUED: April 5, 2016 |
| | : | |

**OPINION**

**JUSTICE TODD**                    **DECIDED: December 28, 2016**

We granted allowance of appeal in the instant case to determine whether illegally-obtained evidence which is suppressed during criminal proceedings should likewise be suppressed during parole and probation revocation proceedings pursuant to Article I, Section 8 of the Pennsylvania Constitution. We conclude that it should, and, therefore, we reverse the Superior Court's order affirming the trial court's denial of Appellant Khiri Arter's motion to suppress, vacate the order revoking Appellant's parole, and remand to the trial court for further proceedings.

**I. Factual and Procedural Background**

At approximately 5:30 p.m. on May 15, 2013, Harrisburg Police Officer Darin Bates and Dauphin County Adult Probation Officer ("APO") Richard Anglemeyer were traveling in an unmarked police vehicle in an area known for frequent drug activity when they observed two men conversing on a street corner; one of those men was Appellant.

According to Officer Bates' testimony, APO Anglemeyer recognized Appellant as one of his parolees,[1] and asked Officer Bates to stop the vehicle. APO Anglemeyer walked toward Appellant, and then summoned Appellant to come and speak with him. APO Anglemeyer told Appellant that he was his assigned probation officer, and proceeded to give him reporting instructions. APO Anglemeyer then asked Appellant if he could search him, and Appellant declined, stating, "Come on, man. You gonna do me like that? I just got out of jail." N.T. Hearing, 11/14/13, at 16. Notwithstanding Appellant's objection, APO Anglemeyer performed a pat-down search of Appellant and felt a bulge in the right coin pocket of Appellant's pants. APO Anglemeyer reached into Appellant's pocket and retrieved what appeared to be crack cocaine. APO Anglemeyer then "turned the case over to Officer Bates," who arrested Appellant. Id. at 18. A search incident to his arrest revealed that Appellant was carrying a second bag of cocaine, a digital scale, a cell phone, and $21.

The Commonwealth charged Appellant with possession with intent to deliver a controlled substance and possession of drug paraphernalia. As a consequence of the new criminal charges, the Dauphin County Adult Probation and Parole Office issued a detainer against Appellant, asserting that he violated the terms of his parole, and requesting a revocation hearing.

At the ensuing criminal proceedings on the new drug charges, commenced in the Dauphin County Court of Common Pleas, Appellant filed a motion to suppress the evidence seized by APO Anglemeyer. The Honorable Andrew H. Dowling granted Appellant's motion to suppress, concluding the search of Appellant was not supported by reasonable suspicion, as required under 42 Pa.C.S. § 9912(d)(1)(i). As discussed

---

[1] Appellant had been released on parole ten days earlier, after serving a sentence for receiving stolen property and carrying a firearm without a license.

further below, pursuant to Section 9912(d)(1)(i), a parole officer may conduct a personal search of an offender, *inter alia*, "if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision." The Commonwealth did not appeal the trial court's order, and instead filed a *nolle prosequi.* Furthermore, in its brief to this Court, the Commonwealth does not contest the trial court's determination that APO Anglemeyer did not have reasonable suspicion to conduct a search of Appellant pursuant to Section 9912(d)(1)(i), nor does the Commonwealth dispute that the evidence was properly suppressed in the criminal proceedings.

On January 13, 2014, in anticipation of his parole revocation hearing, and recognizing that the United States Supreme Court has ruled that the exclusionary rule is not applicable to revocation proceedings under the Fourth Amendment, Appellant filed a motion to suppress the evidence seized by APO Anglemeyer under the privacy protections of Article I, Section 8 of the Pennsylvania Constitution. At his parole revocation hearing, the trial judge, the Honorable Deborah E. Curcillo, denied Appellant's suppression motion, revoked his parole, and resentenced Appellant to serve the balance of his sentence. In an opinion pursuant to Pa.R.A.P. 1925(a), the trial court relied on Commonwealth v. Lehman, 851 A.2d 941 (Pa. Super. 2004), in which the Superior Court declined to apply the exclusionary rule to parole and probation revocation proceedings under Article I, Section 8. Appellant filed a timely appeal to the Superior Court.

A three-member panel of the Superior Court, in an unpublished judgment order, affirmed the trial court's denial of Appellant's motion to suppress. In doing so, the Superior Court recognized that the United States Supreme Court, in Pa. Bd. of Probation & Parole v. Scott, 524 U.S. 357 (1998), held that the exclusionary rule does

not apply in revocation proceedings.  Commonwealth v. Arter, 396 MDA 2014, at 2 (Pa. Super. filed Oct. 8, 2014).  The Superior Court also noted that this Court has held that "the Pennsylvania Constitution does not generally provide parolees with greater protection than the Fourth Amendment when it comes to searches and seizures."  Id. at 1 (citing Commonwealth v. Williams, 692 A.2d 1031, 1039 (Pa. 1997)).    Finally, the Superior Court determined that it was bound by its own decision in Lehman, in which the court stated, "absent direction from our supreme court to the contrary, no deviation from the approach of the U.S. Supreme Court in Scott, supra, is warranted."  Lehman, 851 A.2d at 943, quoted in Arter, 396 MDA 2014, at 2.

Appellant filed a petition for allowance of appeal, and this Court granted allocatur to consider whether the Superior Court erred in upholding the trial court's denial of Appellant's motion to suppress based on Article I, Section 8 of the Pennsylvania Constitution.  Commonwealth v. Arter, 120 A.3d 299 (Pa. 2015) (order).

## II.  Analysis

As Appellant challenges the Superior Court's decision affirming the trial court's denial of his motion to suppress, we first note our well established standard of review of claims regarding the denial of a suppression motion:

> We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.  An appellate court, of course, is not bound by the suppression court's conclusions of law.

Commonwealth v. Gary, 91 A.3d 102, 106 (Pa. 2014) (citation omitted).    In reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary. Weaver v. Lancaster Newspapers, Inc., 926 A.2d 899, 903 (Pa. 2007).

The instant matter implicates both the Fourth Amendment to the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Article I, Section 8 provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. art. I, § 8.

Plainly speaking, both the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution generally require that, prior to conducting a search of an individual or his or her property, the police must obtain a warrant, supported by probable cause and issued by a neutral magistrate. Commonwealth v. Petroll, 738 A.2d 993, 998 (Pa. 1999). This rule is subject to limited exceptions, such as the existence of exigent circumstances. Id. at 999.

To effectuate the rights guaranteed under the Fourth Amendment, in the early part of the last century, the United States Supreme Court adopted the exclusionary rule, which bars the use of evidence obtained through an illegal search and seizure. Weeks v. United States, 232 U.S. 383 (1914). Although the rule initially applied only to federal prosecutions, in Mapp v. Ohio, the high Court expanded the scope of the exclusionary

rule to state prosecutions. 367 U.S. 643, 655 (1961) (holding "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court").

The high Court has repeatedly explained that the purpose of the exclusionary rule is not to "cure the invasion of the defendant's rights which he has already suffered." United States v. Leon, 468 U.S. 897, 906 (1984) (citation omitted). Rather, the rule is a "judicially created means of deterring illegal searches and seizures." Scott, 524 U.S. at 363 (citing United States v. Calandra, 414 U.S. 338, 348 (1974)). Thus, the high Court has stated that the exclusionary rule applies only "where its remedial objectives are thought most efficaciously served." Calandra, 414 U.S. at 348; see also United States v. Janis, 428 U.S. 433, 454 (1976) ("If . . . the exclusionary rule does not result in appreciable deterrence, then, clearly, its use . . . is unwarranted."); Leon, 468 U.S. at 908 (evidence seized in good faith by police pursuant to warrant duly issued by a magistrate, but which is later deemed unsupported by probable cause, need not be suppressed pursuant to Fourth Amendment because the deterrence goal of the exclusionary rule would not be served). Further, the rule applies "only where its deterrence benefits outweigh its 'substantial social costs.'" Scott, 524 U.S. at 363 (quoting Leon, 468 U.S. at 907).

Of particular relevance to the instant case, in accordance with this balancing approach − requiring that the exclusionary rule's deterrence benefits outweigh its social costs − the United States Supreme Court consistently has declined to extend the exclusionary rule to proceedings other than criminal trials. For example, in Calandra, the high Court held that the exclusionary rule does not apply to grand jury proceedings, noting that such proceedings play a special role in the law enforcement process, and concluding that the flexible, non-adversarial nature of the proceedings would be

jeopardized if the exclusionary rule were to apply. 414 U.S. at 343-46. In <u>Janis</u>, the Court held that the exclusionary rule did not preclude the introduction of unconstitutionally obtained evidence in a federal civil tax proceeding because the cost of excluding the relevant and reliable evidence would outweigh the marginal deterrence benefits. 428 U.S. at 448, 454. In <u>INS v. Lopez-Mendoza</u>, 468 U.S. 1032, 1050 (1984), the high Court refused to extend the exclusionary rule to civil deportation proceedings, citing the high social cost of permitting an immigrant to remain in the country illegally and the incompatibility of the rule with the administrative nature of deportation proceedings.

Finally, and dispositive of Appellant's right to relief under the Fourth Amendment, in <u>Scott</u>, the high Court specifically declined to extend application of the exclusionary rule to parole revocation proceedings. In <u>Scott</u>, which arose out of Pennsylvania state proceedings, a condition of Scott's parole was that he refrain from owning or possessing weapons. Scott signed a parole agreement which provided:

> I expressly consent to the search of my person, property and residence, without a warrant by agents of the Pennsylvania Board of Probation and Parole. Any items, in *[sic]* the possession of which constitutes a violation of parole/reparole shall be subject to seizure, and may be used as evidence in the parole revocation process.

524 U.S. at 360.

Several months after he was paroled, parole officers suspected that Scott had violated several conditions of his parole, including the prohibition against possessing firearms. The parole officers arrested Scott at a local diner, whereupon Scott gave the parole officers the keys to his residence, which was owned by his mother. Without obtaining a warrant, the parole officers entered the residence, although they did not conduct a search until Scott's mother arrived. Notably, the parole officers did not request permission to conduct a search, and Scott's mother did not give permission for

a search, although she did direct them to Scott's bedroom, wherein the officers found, *inter alia*, five firearms. At his subsequent parole violation hearing, Scott sought suppression of the evidence on the ground that the search violated his rights against unreasonable searches and seizures under the Fourth Amendment. The hearing examiner rejected Scott's challenge and admitted the evidence, and the Pennsylvania Board of Probation and Parole revoked Scott's parole.

Scott appealed, and the Commonwealth Court reversed and remanded, holding the search of Scott's residence was conducted without the owner's consent, and, moreover, was not authorized by any state statutory or regulatory framework ensuring the reasonableness of searches by parole officers. Commonwealth v. Scott, 668 A.2d 590, 597 (Pa. Cmwlth. 1995). Additionally, the court concluded that the exclusionary rule should apply because the benefit of deterring unlawful police conduct substantially outweighed the injury resulting from exclusion of the evidence. Id. at 600. The Commonwealth appealed the Commonwealth Court's decision, and, ultimately, this Court affirmed the Commonwealth Court's holding in Scott. Commonwealth v. Scott, 698 A.2d 32 (Pa. 1997).[2] Initially, we opined that the signed parole agreement was immaterial to Scott's Fourth Amendment right against unreasonable searches and seizures. Id. at 36. We then determined that the search of Scott's residence was unreasonable because it was supported by the agents' "mere speculation," as opposed to reasonable suspicion, of a parole violation. Id. Finally, "modify[ing]" our prior holding in Commonwealth v. Kates, 305 A.2d 701 (Pa. 1973), wherein we held that the federal

---

[2] Prior to this Court deciding the case, the Commonwealth Court, in Kyte v. Pa. Bd. of Prob. & Parole, 680 A.2d 14 (Pa. Cmwlth. 1996), overruled its decision in Scott "to the extent that it holds that a balancing test applies and that the evidence from the warrantless search should have been excluded from the parole revocation hearing." Id. at 18.

exclusionary rule did not apply to parole revocation proceedings, we concluded that the exclusionary rule did apply because the officers who conducted the search knew of Scott's parole status, and application of the rule was necessary to deter illegal searches of parolees. Id. at 38-39.

Subsequently, the United States Supreme Court granted *certiorari*, and reversed this Court's decision. Reiterating that the federal exclusionary rule is designed to deter illegal searches and seizures, and, thus, should only be applied where the deterrence objective can be served, and noting that it previously declined to extend the exclusionary rule to proceedings other than criminal trials, see Janis, Calandra, and Lopez-Mendoza, the high Court concluded:

> Application of the exclusionary rule would both hinder the functioning of state parole systems and alter the traditionally flexible, administrative nature of parole revocation proceedings. The rule would provide only minimal deterrence benefits in this context, because application of the rule in the criminal trial context already provides significant deterrence of unconstitutional searches.

524 U.S. at 364.

While, as a federal matter, it is undisputed that the exclusionary rule does not apply to revocation proceedings, in the case *sub judice*, Appellant argues that this Court should apply the exclusionary rule to probation and parole revocation proceedings pursuant to the distinct privacy protections of Article I, Section 8 of the Pennsylvania Constitution. Indeed, it is well settled that, in interpreting a provision of the Pennsylvania Constitution, this Court is not bound by decisions of the United States Supreme Court which interpret similar federal constitutional provisions. Commonwealth v. Edmunds, 586 A.2d 887, 894 (Pa. 1991). Rather, "the federal constitution establishes certain minimum levels which are 'equally applicable to the [analogous] state constitutional provision,'" and "each state has the power to provide broader

standards, and go beyond the minimum floor which is established by the federal Constitution." Id. (citations omitted). Moreover, "[t]he United States Supreme Court has repeatedly affirmed that the states are not only free to, but also encouraged to engage in independent analysis in drawing meaning from their own state constitutions." Id. As we discuss below, this Court has determined that Article I, Section 8 affords broader protection than the Fourth Amendment in a variety of circumstances.

As we further explained in Edmunds, when a litigant seeks relief based exclusively on the Pennsylvania Constitution, as does Appellant in this case, it is important that the litigant brief and analyze the following four factors: (1) the text of the Pennsylvania constitutional provision; (2) the history of the provision, including Pennsylvania case law; (3) relevant case law from other jurisdictions; and (4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence. Edmunds, 586 A.2d at 895; Commonwealth v. Russo, 934 A.2d 1199, 1205 (Pa. 2007). Appellant has addressed in his brief each of the four Edmunds factors. Thus, to determine whether illegally-seized evidence is subject to the exclusionary rule under Article I, Section 8, we proceed to consider these factors *seriatim*.

## A. Comparative text of federal and state constitutional provisions

The first prong of an Edmunds analysis requires an examination of the text of the relevant state constitutional provisions. As set forth above, Article I, Section 8 of the Pennsylvania Constitution provides:

**Security from searches and seizures**

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may

be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. art. I, § 8.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

The text of the Pennsylvania Constitution is undeniably similar to that of the Fourth Amendment to the United States Constitution. We note that both provisions guarantee an individual's right to be free from unreasonable searches and seizures of their "person." Further, neither provision specifically precludes application to probationers and/or parolees. Thus, we find a comparison of the text of the two provisions provides little guidance as to whether the exclusionary rule should apply to revocation proceedings pursuant to Article I, Section 8. Moreover, despite the similarity of the language, we are not bound to interpret the two provisions as if they were mirror images. See Edmunds, 586 A.2d at 895-96. Accordingly, we proceed to the second prong of Edmunds.

**B. History of Article I, Section 8 and interpretative case law**

As this Court recounted in Edmunds, despite a common misconception that Pennsylvania's state constitution is patterned after the United States Constitution, the reverse is actually true: "[t]he federal Bill of Rights borrowed heavily from the Declarations of Rights contained in the constitutions of Pennsylvania and other colonies." Id. at 896. In fact, Article I, Section 8 of our Commonwealth's Constitution,

contained in Clause 10 of Pennsylvania's original Constitution of 1776,[3] was enacted 15 years prior to the adoption of the Fourth Amendment to the United States Constitution. The provision was reworded during the 1790 revisions to the Pennsylvania Constitution, and reappeared as Article I, Section 8, the modern version of which has remained largely untouched for two hundred years.[4]  As we observed in Commonwealth v. Sell, the provision evidences an overriding concern for privacy:

> In construing Article I, section 8, we find it highly significant that the language employed in that provision does not vary in any significant respect from the words of its counterpart in our first constitution.  The text of Article I, section 8 thus provides no basis for the conclusion that the philosophy and purpose it embodies today differs from those which first prompted the Commonwealth to guarantee protection from unreasonable governmental intrusion.  Rather, the survival of the language now employed in Article I, section 8 through over 200 years of profound change in other areas demonstrates that the paramount concern for privacy first adopted as part of our organic law in 1776 continues to enjoy the mandate of the people of this Commonwealth.

470 A.2d 457, 467 (Pa. 1983).

Indeed, since 1973, this Court has repeatedly emphasized that Article I, Section 8, "is meant to embody a strong notion for privacy, carefully safeguarded in this

---

[3] Clause 10 provided:

> That the people have a right to hold themselves, their houses, papers, and possessions free from search and seizure, and therefore warrants without oaths or affirmations first made, affording a sufficient foundation for them, and whereby any officer or messenger may be commanded or required to search suspected places, or to seize any person or persons, his or their property, not particularly described, are contrary to that right, and ought not be granted.

[4] The words "subscribed to by the affiant" were added by the Constitutional Convention of 1873.

Commonwealth for the past two centuries." Edmunds, 586 A.2d at 897; see also Commonwealth v. Henderson, 47 A.3d 797, 810-11 (Pa. 2012) ("The historical motivation of the drafters of our original Constitution . . . was to protect the right of individual privacy from unlawful governmental intrusion through the insistence that no search or seizure of a person via warrant take place unless that warrant was supported by probable cause.").

We have further declared that "[t]he notion of privacy in Article I, § 8 is greater than that of the Fourth Amendment," and, when compared to federal courts, Pennsylvania courts "have given greater weight to an individual's privacy interests when balancing the importance of privacy against the needs of law enforcement." Commonwealth v. McCree, 924 A.2d 621, 626-27 (Pa. 2007); see also Sell, 470 A.2d at 468 ("Article I, section 8 of the Pennsylvania constitution, as consistently interpreted by this Court, mandates greater recognition of the need for protection from illegal governmental conduct offensive to the right of privacy."); Edmunds, 586 A.2d at 899 (Article I, Section 8 "may be employed to guard individual privacy rights against unreasonable searches and seizures more zealously than the federal government does under the Constitution of the United States" (quoting Commonwealth v. Melilli, 555 A.2d at 1258 (Pa. 1989))).

Significantly, with respect to our employment of the exclusionary rule, in Edmunds, we most emphatically explicated the privacy focus of Article I, Section 8, in distinction to the deterrence-based Fourth Amendment. In Edmunds, we determined that, where the affidavit in an application for a search warrant was insufficient to establish probable cause, application of the good faith exception to the exclusionary rule, as articulated by the United States Supreme Court in Leon, supra, would frustrate the guarantees embodied in Article I, Section 8:

Whether the United States Supreme Court has determined that the exclusionary rule does not advance the 4th Amendment purpose of deterring police conduct is irrelevant. Indeed, we disagree with that Court's suggestion in Leon that we in Pennsylvania have been employing the exclusionary rule all these years to deter police corruption. We flatly reject this notion. We have no reason to believe that police officers or district justices in the Commonwealth of Pennsylvania do not engage in "good faith" in carrying out their duties. What is significant, however, is that our Constitution has historically been interpreted to incorporate a strong right of privacy, and an equally strong adherence to the requirement of probable cause under Article 1, Section 8. Citizens in this Commonwealth possess such rights, even where a police officer in "good faith" carrying out his or her duties inadvertently invades the privacy or circumvents the strictures of probable cause. To adopt a "good faith" exception to the exclusionary rule, we believe, would virtually emasculate those clear safeguards which have been carefully developed under the Pennsylvania Constitution over the past 200 years.

Edmunds, 586 A.2d at 899.

Following Edmunds, we have continued to emphasize the unique privacy focus of Article I, Section 8. In Commonwealth v. Mason, 637 A.2d 251 (Pa. 1993), evidence seized by police who forcibly entered a dwelling place in the absence of a warrant or exigent circumstances was obtained in violation of the defendant's rights under Article I, Section 8, and, therefore, was inadmissible in his subsequent criminal prosecution, notwithstanding the fact that the evidence would be admissible under the independent source doctrine if the case were decided under Fourth Amendment law.

In Commonwealth v. Matos, 672 A.2d 769 (Pa. 1996), we concluded that a police officer's seizure of evidence discarded by a fleeing individual during a police pursuit that was unsupported by reasonable suspicion or probable cause was an unconstitutional seizure under Article I, Section 8, and must be suppressed, notwithstanding the United States Supreme Court's holding in California v. Hodari D., 499 U.S. 621 (1991), that a seizure must involve actual physical contact by the officer.

In Commonwealth v. Johnson, 530 A.2d 74 (Pa. 1987), we determined that a canine sniff of a storage locker constitutes a search under Article I, Section 8, and, therefore, must be supported by reasonable suspicion, despite the United States Supreme Court's holding in United States v. Place, 462 U.S. 696 (1983), that a canine sniff search is not a search for Fourth Amendment purposes. The above decisions exemplify the strong privacy interest embodied in Article I, Section 8 of the Pennsylvania Constitution.

Although we have not previously addressed whether the state exclusionary rule applies to revocation proceedings, in Williams, supra, we declined to hold that Article I, Section 8 of the Pennsylvania Constitution provided a parolee greater protection from unreasonable searches and seizures than provided under the Fourth Amendment. In Williams, the appellee, Eric Williams, prior to his release from prison after serving a sentence for possession with intent to deliver cocaine, and as a condition of his parole, signed a form consenting to warrantless searches of his person, property, and residence by parole agents. Williams also agreed that any evidence discovered during those searches could be used in a parole revocation proceeding. After receiving information which led him to believe that Williams was selling drugs, a parole agent went to Williams' residence. Williams was not present, but his mother was, and, when asked by the parole agent if he could search Williams' bedroom, she refused. The parole agent searched the room over her objection, and discovered cocaine packaged for resale, as well as other drug paraphernalia. The Commonwealth filed new criminal charges against Williams, who filed a motion to suppress the evidence on the ground that the search of his bedroom was performed without a warrant, lacked probable cause, and violated the knock and announce rule. The trial court denied the motion, and Williams was convicted by a jury of the new charges. On appeal, the Superior

Court reversed and remanded for a new trial on the basis that the evidence was seized from Williams' bedroom in violation of his Fourth Amendment rights.

This Court reversed the Superior Court's decision. We first observed that probationers and parolees have "limited Fourth Amendment rights because of a diminished expectation of privacy," such that a parole officer does not need probable cause to obtain a search warrant before conducting a search. 692 A.2d at 1035 (citing Griffin v. Wisconsin, 483 U.S. 868, 873-75 (1987)). We further noted that, "[i]n order to . . . facilitate the parolee's transition into society, the General Assembly has given the Parole Board broad powers to supervise a parolee and to impose regulations on a parolee's conduct upon release that the Commonwealth could not impose on ordinary citizens," such as requiring a parolee to report regularly to his parole officer, live in a residence approved by the Parole Board, abstain from drugs, and refrain from owning a weapon and engaging in assaultive behavior. 692 A.2d at 1036 (citing 61 P.S. § 331.23)

We recognized, however, that, while diminished, a parolee does have a protected privacy interest under the Fourth Amendment, and, therefore, searches of probationers and parolees must be "reasonable." Williams, 692 A.2d at 1035; see also Commonwealth v. Pickron, 634 A.2d 1093, 1096 (Pa. 1993) (noting that U.S. Supreme Court has recognized that parolees do have "limited fourth and fifth amendment rights in parole revocation hearings," and holding that, absent statutory or regulatory guidance, or an agreement by a parolee consenting to a warrantless search, the Fourth Amendment prohibits warrantless searches of probationers and parolees).[5] Concluding that a warrantless search pursuant to a signed parole agreement "comports with the

---

[5] In Pickron, the appellant did not present a claim under the Pennsylvania Constitution.

Fourth Amendment protection afforded to parolees by the United States Supreme Court" and our sister states, and noting that Williams signed a parole agreement specifically authorizing warrantless searches of his person and premises, we determined that the search of Williams' bedroom was reasonable, and, therefore, that his Fourth Amendment rights had not been violated. 692 A.2d at 1037.

As Williams alternatively sought suppression of the evidence pursuant to Article I, Section 8, this Court then proceeded to conduct an Edmunds analysis. After considering the decisions from several other state courts which had concluded that their state constitutions do not afford greater protection for probationers or parolees than does the Fourth Amendment, see State v. Lucas, 783 P.2d 121 (Wash. App. 1989); People v. Burgener, 714 P.2d 1251 (Cal. 1986), and reiterating that "a parolee must expect to have a diminished right to privacy as a condition of being released from prison early and regaining his freedom from incarceration in order to insure an orderly transition from incarceration to freedom," we opined that there was no reason to "articulate a different standard for the legality of the search under Article I, Section 8 . . . than under the Fourth Amendment." 692 A.2d at 1039. Thus, we upheld the search as a state constitutional matter as well.[6]

Notably, however, the critical issue in Williams, and in the cases relied on therein, was, in the first instance, the legality of the warrantless search under the federal and state constitutions. See Williams; People v. Slusher, 844 P.2d 1222, 1225 (Colo. Ct. App. 1992) (parole officers had reasonable grounds to believe that defendant was in

---

[6] Specifically, we noted in Williams that the information received from the confidential informant, who the parole officer believed to be reliable, that appellee was dealing drugs, and which "was independently corroborated by the parole agent" based on a conversation with local police, established that the parole officer had a reasonable suspicion that appellee had violated the terms of his parole. 692 A.2d at 1037.

violation of his parole based on information they received from the police and thus warrantless search of defendant's home was deemed proper); State v. Vailes, 564 So.2d 778, 781 (La. Ct. App. 1990) (probation officer's search of probationer's house was "reasonable" where officer had received information that defendant was possibly selling drugs and keeping weapons in his home); State v. Vega, 718 P.2d 598, 601 (Idaho Ct. App. 1986) (information provided by parolee's girlfriend and victim identification of parolee as person who committed robbery was sufficient to support a reasonable belief that defendant had violated his parole).

By contrast, in the present case, the trial court determined that the search of Appellant was illegal in that it was not supported by probable cause or reasonable suspicion, a finding not presently before this Court. Rather, the issue before us is whether the illegally obtained evidence should have been suppressed in Appellant's parole revocation proceedings under Article I, Section 8 of the Pennsylvania Constitution, even though it would not be subject to the exclusionary rule under the Fourth Amendment.

The decisions of this Court, discussed above, evidence that "the purpose underlying the exclusionary rule in this Commonwealth is quite distinct from the purpose underlying the exclusionary rule under the 4[th] Amendment." Edmunds, 586 A.2d at 897. Furthermore, our cases reveal that, while probationers and parolees have "a more narrowly protected privacy interest" than an individual not on probation or parole, Williams, 692 A.2d at 1036, they nonetheless have a protected privacy interest, and searches of probationers and parolees must be "reasonable." Id. at 1035. On balance, we find our decisions support application of the exclusionary rule in this context.

**C. Case law from other jurisdictions**

We now turn to the third prong of Edmunds, which requires an examination of the decisions of our sister states that have considered whether their state constitutions afford greater protection than the Fourth Amendment with respect to application of the exclusionary rule in probation and parole revocation proceedings. Appellant cites several decisions in which appellate courts have determined, based on the strong notion of the protection of privacy interests embodied in their state constitutions, that the exclusionary rule applies to revocation proceedings. In State v. Marquart, 945 P.2d 1027 (N.M. Ct. App. 1997), the New Mexico Court of Appeals held that, pursuant to Article II, Section 10 of the New Mexico Constitution, the exclusionary rule extends to probation revocation proceedings. In so holding, the court explained:

> The New Mexico Supreme Court in [State v. Guiterrez, 863 P.2d 1052 (N.M. 1993),] distinguished its rationale for application of the exclusionary rule from that of the United States Supreme Court. While the United States Supreme Court held that the purpose of the exclusionary rule is to deter police misconduct, the New Mexico Supreme Court has held that the focus of the exclusionary rule "is to effectuate in the pending case the constitutional right of the accused to be free from unreasonable search and seizure." . . . Accordingly, our Supreme Court in Guiterrez emphasizes that our state constitution focuses on the constitutional [privacy] rights of individuals; thus, the exclusionary rule is not a "mere 'judicial remedy'" for unconstitutionally seized evidence. . . . Application of the exclusionary rule to probation revocation proceedings is consistent with this state's constitutional purpose.

Marquart, 945 P.2d at 1031. Notably, the Marquart court concluded that the exclusionary rule applies even where the evidence is seized by an officer who is unaware of the probationer's status.

In State ex rel Juvenile Dep't of Multnomah County v. Rogers, 836 P.2d 127 (Or. 1992), the Oregon Supreme Court held that, under its state constitution, the exclusionary rule applied to probation revocation proceedings. In doing so, the Court

distinguished the underlying purpose of the Fourth Amendment with that of its state constitution as follows:

> "[U]nlike the Fourth Amendment exclusionary rule, which has been based on deterring police misconduct, exclusions under Article I, section 9 [of the Oregon Constitution] have been based on the personal right to be free from an unlawful search and seizure." Thus, when the government violates an individual's Article I, section 9, rights by conducting an unreasonable search or seizure in obtaining evidence, the individual's state constitutional right to be secure against that unlawful search or seizure is protected "through the sanction of [the] suppression of evidence." This court has consistently reaffirmed that personal rights underlie the Oregon exclusionary rule.

Id. at 129-30 (citing, *inter alia*, State v. Tanner, 745 P.2d 757, 761 (Or. 1987) (noting Oregon Supreme Court "identified privacy as the principal interest protected against unlawful searches")). The court further concluded that application of the exclusionary rule is not limited to criminal prosecutions, and that the petitioner, who had been on probation but was recommitted to the custody of the state, had a liberty interest that was "sufficiently analogous to the liberty interest at stake in traditional criminal prosecutions that the reasons for the sanction of suppression of evidence are equally applicable." Id. at 130.

In State v. Lampman, 724 P.2d 1092 (Wash. App. 1986), the Washington Court of Appeals acknowledged that its state courts had long held that the exclusionary rule did not apply to parole or probation revocation proceedings, but concluded that the "recent recognition of broader protections embodied in the state constitution" required it to reevaluate those holdings. Id. at 1094. The court observed that "the exclusionary rule is merely a remedial measure for Fourth Amendment violations," designed to deter unlawful police conduct, whereas "the emphasis of article 1, section 7 of the state

constitution is on protecting an individual's right to privacy rather than on curbing governmental actions." Id. at 1095. The court concluded:

> Guided by this emphasis on the right to privacy, we hold that article 1, section 7 requires application of the exclusionary rule, without exception, to probation revocation proceedings. The exclusionary rule, under article 1, section 7, is a remedy for a violation of an individual's right to privacy. If a probationer's right to privacy is violated, the exclusionary rule should be invoked regardless of the particular proceeding involved. A probationer, however, has a diminished expectation of privacy, which, in effect, means a diminished *right* of privacy.[7] That diminished expectation or right of privacy is reflected in the warrantless search excepted [sic] that Washington courts apply to reasonable searches of probationers. The standard for determining whether a warrantless search of a probationer is reasonable is whether the police or probation officer has a well-founded suspicion that a probation violation has occurred.
>
> The determination of whether a probationer's right to privacy has been violated is dependent, then, on the nature of the search conducted and is not dependent on the nature of the proceeding in which the fruits of the search are to be admitted.

Id. at 1095 (emphasis original, internal footnotes and citations omitted).

Appellant also cites Mason v. State, 838 S.W.2d 657, 659 (Tex. Ct. App. 1992) (recognizing that "[e]vidence that is obtained as a result of an illegal search and seizure is inadmissible over objection in a probation revocation hearing"), and State v. Dodd, 419 So.2d 333 (Fla. 1982) (holding that the exclusionary rule embodied in the search and seizure provision of the state constitution applies in probation revocation proceedings).

---

[7] The court explained that "diminished right of privacy" means that, "insofar as the State has a continuing interest in the defendant and its supervision of him as a *probationer*, the defendant can expect State officers and their agents to scrutinize him closely and search his person, home and effects on less than probable cause." Lampman, 724 P.2d at 1095 n.3 (emphasis original).

The Commonwealth, in its brief, cites a number of decisions in which state courts have concluded that evidence seized in violation of the Fourth Amendment is admissible at probation and parole revocation proceedings under their state constitutions. In Connecticut v. Foster, 782 A.2d 98 (Conn. 2001), the Connecticut Supreme Court considered several factors, similar to those set forth in Edmunds, to determine whether its state constitution affords greater protection than the federal constitution to a probationer who was subjected to a warrantless search of his home. The court first opined that the history of Connecticut's exclusionary rule did not support its application in parole and probation revocation proceedings, as, "[u]ntil the United States Supreme Court's decision in Mapp v Ohio, . . . Connecticut courts did not exclude unconstitutionally seized evidence." 782 A.2d at 100. The Foster court further noted that its precedent did not support extending the exclusionary rule to parole and probation revocation proceedings because "[t]he purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim. . . . Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." Id. at 101 (quoting Payne v. Robinson, 541 A.2d 504 (Conn. 1988)). In this regard, the court emphasized that there was no evidence that the police officers who conducted the search were aware that the defendant was on probation.

The Commonwealth also cites Georgia v. Thackston, 716 S.E.2d 517 (Ga. 2011), wherein the Georgia Supreme Court declined to apply the exclusionary rule to probation proceedings based on its conclusion that such application "would achieve only marginal deterrent effects and would significantly alter and affect the proper administration of the probation system in this state." Id. at 520.

Finally, the Commonwealth relies on <u>Massachusetts v. Olson</u>, 541 N.E.2d 1003 (Mass. 1989)).  In <u>Olsen</u>, the Massachusetts Supreme Court likewise refused to apply the exclusionary rule to a probation revocation proceeding on the ground that exclusion of reliable, but illegally obtained, evidence "would provide at most only marginal additional deterrence against police misconduct."  <u>Id.</u> at 1005.[8]  Like the Connecticut Supreme Court in <u>Foster</u>, the court in <u>Olsen</u> specifically left open "the question whether the police officer's knowledge of the probationer's status would compel a different result.  <u>Olsen</u>, 541 N.E.2d at 1006.

Some states have determined that the exclusionary rule applies to parole or probation proceedings only in certain circumstances.  For example, the Supreme Court of Virginia, in <u>Logan v. Commonwealth</u>, 688 S.E.2d 275 (Va. 2010), held that the exclusionary rule applies to revocation proceedings only where the defendant demonstrates bad faith on behalf of the police officer involved.  To meet this burden, "the evidence must show that the officer making the search was motivated by bias, personal animus, a desire to harass, a conscious intent to circumvent the law, or a similar improper motive."  <u>Id.</u> at 278;  <u>see</u> <u>also</u> <u>State v. Turner</u>, 891 P.2d 318, 323 (Kan. 1995) (generally concluding that the exclusionary rule does not apply to probation revocation proceedings, but opining "there may be instances where the illegal acts of police officers, in the totality of the circumstances, are so egregious that the need for their deterrence outweighs the court's need for information"); <u>People v. Ressin</u>, 620 P.2d 717, 721 (Colo. 1980) (in the absence of evidence that law enforcement officers "knowingly engaged in a pretext arrest and exploratory search of the defendant because

---

[8] In <u>Olsen</u>, the evidence obtained as a result of the search of the defendant's home, for which police had a warrant, ultimately was suppressed at the defendant's criminal trial, for reasons not of record.

of his probationary status," or engaged in a course of harassment or other egregious misconduct, the exclusionary rule does not apply to probation revocation proceedings); State v. Sears, 553 P.2d. 907, 914 (Alaska 1976) (holding that probation and parole revocation hearings are not criminal proceedings such that the state exclusionary rule applies, but noting that police misconduct which shocks the conscience may lead to invocation of the exclusionary rule).

Our review of the decisions of our sister states reveals that those courts which refuse to apply the exclusionary rule to parole and probation proceedings construe the exclusionary rule as a judicially created remedy intended to safeguard Fourth Amendment rights through deterrence, and have concluded that application of the rule would only marginally serve their respective constitutions' primary interest of deterrence. In contrast, those courts which view the primary purpose of the exclusionary rule as protecting individual privacy interests have concluded that the exclusionary rule is applicable to parole and probation revocation proceedings. In light of this Court's long-standing interpretation of Article I, Section 8 as embodying a strong individual privacy right, our perspective on this issue is more aligned with the decisions of those states that have applied the exclusionary rule to parole and probation revocation proceedings.

### D. Policy considerations

The final prong of an Edmunds analysis is an examination of the relevant policy considerations at stake, particularly those of state and local concern in our Commonwealth. Appellant first contends that applying the exclusionary rule to parole and probation proceedings under Article I, Section 8 of the Pennsylvania Constitution is consistent with the existing legislative scheme that allows warrantless searches by parole and probation officers upon reasonable suspicion. See 42 Pa.C.S.

§ 9912(d)(1)(i). In this regard, Appellant argues that application of the exclusionary rule to parole and probation revocation proceedings is the only effective remedy for violations of Section 9912(d)(1)(i): "[w]ithout a remedy for the violation of privacy, the statutory framework authorizing the search and seizure of probationers and parolees based upon reasonable suspicion through the 'special needs' exception to the warrant requirement becomes illusory." Appellant's Brief at 41. Appellant further suggests that application of the exclusionary rule in parole and probation revocation proceedings will ultimately deter misconduct because probation and parole officers will likely refrain from conducting unlawful searches if they know that any evidence discovered may not be used to seek revocation, and, therefore, probation and parole officers will be more inclined to obtain a warrant prior to conducting a search for evidence that may be used in revocation proceedings. Id. at 47.

In response to Appellant's arguments, the Commonwealth argues that "the Pennsylvania Constitution does not recognize any more privacy protection than the Federal constitution with regard to probationers and parolees," and submits that "the exclusionary rule, as it applies to criminal proceedings in the Commonwealth, provides a strong deterrent from any misbehavior on the part of parole and probation agents." Commonwealth's Brief at 25-26 (citing Pickron, supra). The Commonwealth also emphasizes that "parole is viewed as a favor that is bestowed upon offenders who are likely to be law abiding citizens if given the chance at early release," and suggests that application of the exclusionary rule in the instant case in particular would "fly in the face of the goals of probation and parole." Id. at 31-32. The Commonwealth additionally posits that applying the exclusionary rule to probation revocation proceedings could negatively affect public safety, contending that, if Appellant had been found to be in possession of a weapon, it would have been "reckless" to exclude evidence of the

weapon in a revocation proceeding. Id. at 32. Finally, the Commonwealth maintains that applying the exclusionary rule to both criminal proceedings and revocation proceedings would eliminate the ability of probation and parole authorities to enforce the terms and conditions of an individual's probation or parole. Id. at 33.

While this Court appreciates the policy arguments made by the Commonwealth, as well as those considered by our sister states,[9] upon review, we conclude that the policy interests in this Commonwealth weigh more strongly in favor of applying the exclusionary rule to parole and probation proceedings. As noted above, pursuant to 42 Pa.C.S. § 9912, the General Assembly has made the policy determination that searches of parolees and probationers must be supported by a reasonable suspicion that the offender is in violation of the conditions of his probation or parole:

> **(a) General rule.**−Officers are in a supervisory relationship with their offenders. The purpose of this supervision is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public.
>
> **(b) Searches and seizures authorized.**−
>
> (1) Officers and, where they are responsible for the supervision of county offenders, State parole agents may search the person and property of offenders in accordance with the provisions of this section.

---

[9] We note that the Massachusetts Supreme Court, in Olsen, supra, offered two additional policy considerations in support of its refusal to extend application of the exclusionary rule to probation proceedings. The court first proposed that excluding evidence from probation revocation hearings might result in a disinclination to order probation in the first instance. The court further opined that its decision "protects the public interest in having access to all reliable evidence relevant to the probationer's conduct and rehabilitation." 541 N.E.2d at 1006.

(2) . . . (iii) Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or section 8 of Article I of the Constitution of Pennsylvania.

**(c) Effect of violation.**−No violation of this section shall constitute an independent ground for suppression of evidence in any probation and parole or criminal proceeding.

**(d) Grounds for personal search.**−

(1) A personal search of an offender may be conducted by an officer;

(i) if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision;

* * *

(2) A property search may be conducted by an officer if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.

(3) Prior approval of a supervisor shall be obtained for a property search absent exigent circumstances. No prior approval shall be required for a personal search.

(4) A written report of every property search conducted without prior approval shall be prepared by the officer who conducted the search and filed in the offender's case record. The exigent circumstances shall be stated in the report.

42 Pa.C.S. § 9912(a)-(d).

We agree with Appellant's suggestion that applying the exclusionary rule to probationers and parolees under Article I, Section 8 is consistent with the requirements of Section 9912. In fact, in Commonwealth v. Wilson, 67 A.3d 736 (Pa. 2013), we specifically opined that the impetus for the General Assembly's adoption of Section 9912, which we described as "clear and unambiguous, and lists no exception," was our

decision in <u>Pickron</u>, wherein we stated: "We think it obvious that Section 9912's progenitor was adopted by the General Assembly with an eye to addressing the constitutional concerns identified in <u>Pickron</u>, and the policymaking branch responded by requiring a degree of suspicion before a warrantless probation search could be conducted." <u>Wilson</u>, 67 A.3d at 744.[10] We likewise observe that, as Appellant contends, without the availability of a remedy in the form of application of the exclusionary rule, the requirements of Section 9912(d)(1)(i) would be substantially undermined.

With regard to the Commonwealth's suggestion that application of the exclusionary rule to parole and probation revocation proceedings will "strip" probation and parole authorities of the ability to enforce the terms and conditions of an individual's probation or parole, Commonwealth's Brief at 33, this Court addressed a similar argument in <u>Wilson</u>. In <u>Wilson</u>, the appellant was convicted of, *inter alia*, persons not to possess firearms, and sentenced to 2½ to 5 years incarceration, followed by 3 years probation. As a condition of probation, the trial court authorized warrantless,

---

[10] Initially, we note that the Commonwealth does not argue that subsection 9912(c) requires affirmance. Moreover, while subsection 9912(c) provides that a violation of subsection 9912(d) will not alone constitute a basis for suppressing the evidence in a revocation proceeding, subsection 9912(b)(2)(iii) nevertheless specifies that Section 9912 shall not be construed as permitting searches or seizures which violate the United States Constitution or Article I, Section 8 of the Pennsylvania Constitution. <u>Cf.</u> <u>In re J.E.</u>, 937 A.2d 421, 427 (Pa. 2007) (rejecting argument by Commonwealth that suppression of evidence seized from juvenile probationer need not be suppressed because subsection 6304(a.1)(3) of Juvenile Act provides that a violation of the statute's requirement that searches of juvenile probationers be supported by reasonable suspicion shall not "constitute an independent ground for suppression of evidence"; we observed that Commonwealth failed to consider subsection 6304(a.1)(2), which provides that Section 6304 shall not "be construed to permit searches or seizures in violation of the Constitution of the United States or section 8 of Article I of the Constitution of Pennsylvania").

suspicionless searches of the appellant's residence for weapons. The appellant challenged the propriety of the condition allowing random searches, arguing that the condition violated his rights under both the Fourth Amendment and Article I, Section 8, of the Pennsylvania Constitution, and that the condition was in conflict with Section 9912. This Court determined that, notwithstanding the language of 42 Pa.C.S. § 9754(c)(13), which authorizes a trial court to require a probationer to satisfy conditions "reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience," sentencing courts "are not empowered to direct that a probation officer may conduct warrantless, suspicionless searches of a probationer as a condition of probation," because such a condition violates Section 9912(d). Wilson, 67 A.3d at 745. In reaching this conclusion, we explained: "We do not doubt that the fear of warrantless suspicionless searches is an effective way of helping a probationer toe the line and rehabilitate himself. But, the statutory scheme, in both of the relevant iterations here, makes clear that there are other factors to consider as well." Id.

Although this Court based its holding in Wilson on the statutory language at issue, as opposed to the parties' constitutional arguments, our reasoning in Wilson answers the Commonwealth's present argument that its ability to enforce the terms of an individual's probation or parole effectively outweighs the recognized privacy rights of a probationer or parolee. As we stated in Williams, in deciding whether a warrantless search by a parole officer conducted pursuant to a parolee's signed parole agreement authorizing warrantless searches could survive constitutional scrutiny, we "must balance the governmental interests involved in granting parole and supervising parolees with that interest of the private individual, i.e., the parolee, which has been affected by the

governmental action." <u>Williams</u>, 692 A.2d at 1035.[11]  Thus, although we have suggested that a parolee has "a more narrowly protected privacy interest than that afforded a free individual," <u>id.</u> at 1036, we have recognized that the government's interest in enforcing the terms of parole and probation cannot entirely displace a parolee's protected privacy rights.

Finally, we conclude that application of the exclusionary rule to revocation proceedings is in accord with this Court's consistent and repeated emphasis that the primary purpose of the exclusionary rule under Article I, Section 8, is protecting the individual privacy rights of our citizens, as opposed to deterring police misconduct.  This purpose is equally applicable to criminal proceedings and revocation proceedings. <u>Accord</u> <u>Rogers</u>, 836 P.2d at 130 (liberty interest of individual who is on probation analogous to liberty interest of defendant in traditional criminal proceeding).

Based on our assessment of the <u>Edmunds</u> factors − the text of Article I, Section 8; the unique history surrounding its origins; its subsequent interpretation by our Court; decisions from those states which share our Commonwealth's commitment to protecting the privacy rights of individuals; and important policy considerations − we conclude they command the application of the exclusionary rule to parole and probation revocation proceedings.

### III. Conclusion

As it is undisputed that there was no reasonable suspicion for the parole officer's warrantless search of Appellant, we hold that, pursuant to Article I, Section 8 of the

---

[11] As discussed above, we ultimately concluded in <u>Williams</u> that a warrantless search pursuant to a signed parole agreement did not violate the defendant's rights under the Fourth Amendment or Article I, Section 8 of the Pennsylvania Constitution.

Pennsylvania Constitution, the evidence seized as a result of the search was inadmissible at Appellant's parole revocation proceedings, and, thus, Appellant's motion to suppress filed with respect to those proceedings should have been granted. Accordingly, we reverse the order of the Superior Court, vacate the order revoking Appellant's parole, and remand this matter to the Superior Court for remand to the trial court for further proceedings.

Justices Baer, Donohue, Dougherty and Wecht join the opinion.

Chief Justice Saylor files a dissenting opinion.