**[J-51-2020][M.O. - Donohue, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 30 EAP 2019 |
| | : | |
| Appellee | : | Appeal from the Judgment of Superior |
| | : | Court entered on 3/5/19 at No. 3246 |
| | : | EDA 2017 affirming the judgment of |
| v. | : | sentence entered on 9/12/17 in the |
| | : | Court of Common Pleas, Philadelphia |
| | : | County, Criminal Division at No. CP-51- |
| KEITH ALEXANDER, | : | CR-0005971-2016 |
| | : | |
| Appellant | : | SUBMITTED: April 28, 2020 |

*DISSENTING OPINION*

**CHIEF JUSTICE SAYLOR**                    **DECIDED: December 22, 2020**

I respectfully dissent, since I wouldn't overrule the holding of *Commonwealth v. Gary*, 625 Pa. 183, 91 A.3d 102 (2014) (plurality opinion), which was supported by a majority of Justices including myself. *See id.* at 243, 91 A.3d at 1138-39 (Saylor, J., concurring).

Substantively, I have many differences with the majority's treatment. For example, its textual comparison of Article I, Section 8 with the Fourth Amendment stresses the former charter's use of the word "possessions," discerning that the use of such an "expansive term[]" signals greater protection. Majority Opinion, *slip op.* at 43 (quoting *Gary*, 625 Pa. at 251, 91 A.3d at 143 (Todd, J., dissenting)). This analysis,

however, fails to recognize that the word "effects" appears in the Fourth Amendment in place of "possessions." U.S. CONST. amend IV.

In terms of the protections intended by the respective framers, I see no difference between "possessions" and "effects." *Accord Soldal v. Cook Cty.*, 506 U.S. 56, 62, 113 S. Ct. 538, 544 (1992) ("[O]ur cases unmistakably hold that the [Fourth] Amendment protects property[.]"). Indeed, the word "possessions" is also used in the Massachusetts Constitution, *see* MASS. CONST. art. XIV, which served as a principal model for the federal Constitution, "leaving no doubt but that textually and historically the federal and state [protections against unreasonable searches and seizures] are essentially the same." Arthur Leavens, *State Constitutionalism: State-Court Deference or Dissonance?*, 33 W. NEW ENG. L. REV. 81, 82-83 (2011); *see also Commonwealth v. Schaeffer*, 370 Pa. Super. 179, 238-39 & nn.6-8, 536 A.2d 354, 384 & nn.6-8 (1987) (Kelly, J., concurring and dissenting) (explaining that the terms presently reposed in Article I, Section 8 were adopted by the Pennsylvania General Assembly in 1790, contemporaneous with the Legislature's ratification of the Fourth Amendment, and highlighting the close similarity of the respective provisions).

More broadly, I have previously set forth my disagreement with the current direction of the new judicial federalism in Pennsylvania relative to the portrayal of the Pennsylvania Constitution as requiring broader applications of the exclusionary rule than are required under federal constitutional law. *See, e.g., Commonwealth v. Arter*, 637 Pa. 541, 571-75, 151 A.3d 149, 168-70 (2016) (Saylor, C.J., dissenting). I continue to believe that greater significance should have been -- and should be -- attached to the absence of any textual delineation of an exclusionary precept in the Pennsylvania Constitution, as well as this Court's non-recognition of a state-level exclusionary rule throughout 200 years of its history. *See id.* at 572-73, 151 A.3d at 168.

To me, the notion that this Court overlooked such a significant requirement for two centuries is thoroughly implausible and has "left the Court vulnerable to criticisms of revisionism and diminished legitimacy in this line of decisions." *Id.* at 573, 151 A.3d at 169 (citing Francis Barry McCarthy, *Counterfeit Interpretations of State Constitutions in Criminal Procedure*, 58 SYRACUSE L. REV. 79, 117, 135-36 (2007) ("Any claim by one of the fourteen states that rejected the exclusionary rule that the state has a long history of protecting state constitutional rights [in this fashion] must ring hollow.")). In this regard, and more broadly, I express my continuing reservations about the seminal decision in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991). *Accord Arter*, 637 Pa. at 571-72, 151 A.3d at 168 (Saylor, C.J., dissenting) (citing Lawrence Friedman*, Reactive and Incompletely Theorized State Constitutional Decision-Making*, 77 MISS. L.J. 265, 300 (2007) (explaining that *Edmunds* failed to supply "a coherent theory to explain how the exclusionary rule should be understood and applied" for purposes of state constitutional law)).[1]

Additionally -- as pertains to the imposition of a state-level exclusionary rule more exacting than the federal analogue -- I find continuing resonance in the position of some commentators that the new judicial federalism has generated, and is generating, a

---

[1] In 1914, the Supreme Court of the United States adopted the exclusionary rule applicable to all federal courts, *see Weeks v. U.S.*, 232 U.S. 383, 389, 34 S. Ct. 341, 346 (1914), which was later made applicable to the states in 1961 via the Due Process Clause of the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691 (1961). Throughout all this period and before, this Court had maintained the common law rule that the admissibility of evidence is not affected by the illegality of the means by which it is obtained. *See Commonwealth v. Chaitt*, 380 Pa. 532, 535 & n.1, 112 A.2d 379, 381 & n.1 (1955) (collecting cases). Furthermore, during the thirty years following *Mapp*, criminal defendants in Pennsylvania could still be convicted using illegally obtained evidence under various circumstances where there was no police misconduct, until the good faith exception was rejected in 1991 in *Edmunds*. *See Edmunds*, 526 Pa. at 411, 586 A.2d at 905-06.

"perplexing mélange of disparate constitutional principles." James W. Diehm, *New Federalism and Constitutional Criminal Procedure: Are We Repeating the Mistakes of the Past?*, 55 M$_D$. L. R$_{EV}$. 223, 244 (1996); *accord* James A. Gardner, *The Failed Discourse of State Constitutionalism*, 90 M$_{ICH}$. L. R$_{EV}$. 761, 763 (1992) (characterizing various departure pronouncements under state constitutions as reflecting a "vast wasteland of confusing, conflicting, and essentially unintelligible pronouncements").

By untethering the exclusionary rule from its federal, deterrence-based rationale while expansively construing Article I, Section 8 to provide greater protection than the Fourth Amendment, I submit that the new judicial federalism impedes the effective enforcement of criminal laws in a fashion well beyond any impact that the framers might have envisioned.