J-S20023-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHELE RENAE HUNTER | : | |
| | : | |
| Appellant | : | No. 1489 MDA 2017 |

Appeal from the Judgment of Sentence April 24, 2017
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0002417-2014

BEFORE: GANTMAN, P.J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY OTT, J.: **FILED SEPTEMBER 07, 2018**

Michele Renae Hunter appeals from the judgment of sentence imposed on April 24, 2017, in the Court of Common Pleas of Franklin County, following her conviction by jury of the third-degree murder of her four-year-old stepson, B.T. Hunter was sentenced to a term of 240-480 months' incarceration, with credit for time served.[1] In this timely appeal, Hunter raises four issues. Specifically, she claims: 1) the trial court erred in charging the jurors they could consider all Hunter's actions between the time of the assault and the

_____

[1] Regarding the assault that eventually claimed B.T.'s life: The assault took place in March 2011, and rendered B.T. comatose; he was kept alive by the use of a ventilator. Hunter was tried and convicted of aggravated assault and related charges in 2014. She received an aggregate term of 108 to 240 months' incarceration. B.T. was adopted in 2012; he remained in the care of his adopted parents until he died, because of the assault, in 2014, shortly after Hunter was convicted in the first trial. Hunter was subsequently charged with third-degree murder, resulting in the conviction now on appeal. The jury in the instant trial was unaware of Hunter's prior conviction.

time B.T. went into cardiac arrest 36 hours later in determining malice, 2) there was insufficient evidence to support the conviction, 3) the trial court erred in denying Hunter's post-trial motion to set aside the verdict as against the weight of the evidence, and 4) the trial court erred in denying Hunter's pre-trial motion to suppress evidence.  After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

The parties to this matter must be well acquainted with the factual history.  We direct attention to the trial court's opinion, dated November 9, 2017, at pages 2-4, for a brief recitation of the facts.  We add our additional detail, taken from the certified record.

On March 15, 2011, Hunter "grabbed [B.T.] by the shoulders and forcibly basically pushed or threw him away from her.  He fell backward striking his head on the carpeted floor and he was at that point unconscious essentially."  N.T. Trial, 1/26/2017, at 16.[2]  Dr. Dias further testified,

> This child was abused.  The child suffered severe head injury and putting all the facts together I have no question in my mind this child suffered abuse of head injury on the morning of the 15th when his stepmother [Hunter] at the very least shoved him and/or threw him across the room and he hit his head on the floor.  He then suffered a head injury at that point, as I said, which was a fairly severe head injury.  He then was left alone without any medical treatment while all these text messages were going back and forth describing the sequence of some neurological recovery from that coma that he had from the head injury on the morning of the 15th and then we see, again, from the text messages and

---

[2] Testimony of Treating Physician, Dr. Mark Dias, M.D.  Dr. Dias is a pediatric neurosurgeon associated with the Penn State Hershey Medical Center.

from the father's statement that evening that he wasn't doing well the next day.

***Id.*** at 45-46.

The text messages between Hunter and William Hunter, B.T.'s father, include a message from Hunter that read: "he's been stretching and flailing his arms kinda like retards do on a normal basis lol … so he's en route to waking up.  It's like he's awake but not conscious." ***Id.***, 1/24/2017, at 67.[3]

The untreated injury essentially caused B.T.'s brain to swell to such a degree that by the evening of March 16, 2011,

> he probably either had a seizure or stopped breathing on his own because of the brain swelling had reached such a critical point that his brain was so compromised that he could no longer keep breathing, so the net effect of that whether it was a seizure or whether it was from pressure in the head was that he stopped breathing and had a – basically a cardiorespiratory arrest.

***Id.***, 1/26/2017, at 26.[4]

On cross-examination, Dr. Dias noted the failure of either Hunter or B.T.'s Father to respond to the clear medical emergency.

> [Defense Counsel]: It's fair to say that neither Michele [Hunter] or William Hunter [Father] had taken the necessary steps required to assist [B.T.], is that correct, I mean, they hadn't tried to get medical help as soon as they should have?
>
> [Dr. Dias]: Yeah, I mean, that's stunning for me but, yes, just when you – in terms of you talking about concussion and parents and other adults bringing children to medical attention, I can certainly tell you from my own personal experience with hundreds of children with concussions that people tend to overreact and to

---

[3] Testimony of Detective Scott Mummert.

[4] Testimony of Dr. Dias.

bring them in for medical attention even when they're really doing pretty well. It's stunning to me that somebody would be unconscious and barely responsive for two days and somebody wouldn't take them to the doctor.

*Id.* at 54.

Hunter's first issue is a claim the trial court erred in instructing the jury, after the jury had deliberated and requested clarification regarding what they could consider in determining malice. Trial counsel were informed of the question and were given the opportunity to respond to the trial court. After considering input from counsel, the trial court informed the jury in the following manner:

> The question is, as to the act being done with malice, is it just as to the shoving act or is the act the entire 36 hours from the shoving until the time the 911 call was made. Is the act just the shoving or is the act what was done in the entire 36 hours.
>
> This is your additional instruction on that point. For murder of the third degree, when deciding whether the defendant acted with malice, you may consider all evidence regarding her words, conduct and attending circumstances that may show *her state of mind at the time of the shove*.
>
> Actions of the defendant that occurred before, during and after the shove may all be considered as attending circumstances.
>
> Malice may also exist where the failure to perform a legal duty was willful and will probably result in the death of the victim.
>
> You may consider all the actions of the defendant in the 36 hour period of time from the shove to cardiac arrest in determining whether the Commonwealth has proven the required malice necessary for the third element of third degree murder.

N.T. Trial, 4/24/2017, at 87 (emphasis added).

In conference, the defense had objected to that portion of the charge from the referral to the willful failure to perform a legal duty to the end of the charge. Specifically, the defense argued there had been no evidence presented demonstrating there would have been any other outcome had Hunter immediately taken B.T. for medical care. In response to the objection, the Commonwealth pointed out Dr. Dias had described the physical/medical process that began with the shove and B.T striking his head and ending with his failure to breath and cardiac arrest. *See id*. at 85-86.

> Our standard of review in assessing a trial court's jury instruction is as follows. "When evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper." *Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014) (citations and quotation omitted). A trial court has "broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." *Id.* (citations and quotation omitted). "Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error." *Id.* (citations and quotation omitted).

*Commonwealth v. Miller*, 172 A.3d 632, 645 (Pa. Super. 2017).

Our review of the certified record, having paid particular attention to the medical testimony provided at trial, leads us to conclude the jury charge given by the trial court was proper. The medical evidence described the ongoing process that ultimately resulted in B.T.'s death as well as the abject lack of a timely response by Hunter, as step-mother of this four-year-old child, to timely obtain medical care for a child that had been rendered immediately unconscious after being thrown to the floor. The totality of Dr. Dias's

- 5 -

testimony, as well as the testimony of other treating medical providers and the pathologist was sufficient to allow the jury to consider Hunter's failure to perform her legal duty to obtain medical attention as evidence of malice. Accordingly, we believe the instruction accurately described the law and was appropriate in light of the evidence presented at trial.

Next, Hunter claims the Commonwealth failed to present sufficient evidence of malice to support a conviction for third degree murder. She argues B.T.'s death was caused by a single push, and there was insufficient evidence to show any suggestion of malice.[5] We disagree.

The standard of review for a challenge to the sufficiency of the evidence is both well known and oft-repeated.

> The standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

---

[5] Because malice is the only element of the crime challenged, we need not detail the other elements of the crime.

***Commonwealth v. Wanner***, 158 A.3d 714, 717-18 (Pa. Super. 2017) (citation omitted).

Hunter is correct that, as a general statement of the law, "a single blow," or as in this matter a single push, "without a weapon is, ordinarily not sufficient to establish malice." Appellant's Brief at 29, quoting ***Commonwealth v. MacArthur***, 629 A.2d 166, 168 (Pa. Super. 1993). However, the trial court correctly notes that it is the totality of the circumstances that determines malice. ***See*** Trial Court Opinion, 11/9/2017, at 11.

The evidence presented at trial depicts substantially more than a single push. The record reveals that Hunter is an adult female standing five feet tall and weighing 175 pounds. A physical description of the child victim, B.T., is not to be found in the certified record. We know only that he was a four-year-old boy at the time the fatal injury was visited upon him. It may be presumed, however, that Hunter was substantially larger than B.T. Dr. Dias testified B.T effectively was thrown to the floor with such force that when his head struck the carpeted floor he was rendered immediately unconscious. This evidence represents a vigorous attack upon a child.

Although his condition waxed and waned, regaining consciousness later in the day, he remained virtually comatose until his brain swelled to such a degree that he suffered respiratory and cardiac arrest. It was not until his eyes rolled back into his head and he stopped breathing that anyone attempted to obtain medical aid. While B.T. remained unconscious on the first

day after the assault, Hunter sent texts to her husband, B.T.'s father, downplaying the extent of the child's injuries, comparing the child's seizure-like actions to those of a "retard", while adding "lol"[6] to the text. The jury was entitled to consider this callous disregard for B.T.'s well-being as evidence of malice in Hunter's abandonment of her duty to provide care for B.T. as well as malice relating back to the attack on the child. Dr. Dias, a pediatric neurosurgeon, who has spent his career treating neurologically compromised children, noted the extensive damage caused by the attack and was stunned by the subsequent disregard of B.T.'s welfare in failing to obtain any medical help in a timely manner.

While our recitation of the facts has sanitized the facts underlying this matter to some degree, it remains clear that what happened to B.T. on the morning of March 15, 2011, was substantially more than a single push. Accordingly, our review of the certified record confirms there was sufficient evidence for the jury to have found Hunter acted with the malice required to support a finding of third degree murder.

Hunter's third claim is the verdict is against the weight of the evidence.[7]

> An appellate court's standard of review when presented with a
> weight of the evidence claim is distinct from the standard of review
> applied by the trial court:

---

[6] The acronym, "lol", stands for "laughing out loud."

[7] This claim was properly preserved via post-trial motion.

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the* weight *of the evidence.* [**Commonwealth v.**] **Brown**, [560 Pa. 410,] 648 A.2d [1177] at 1189 [(1994)]. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. **Commonwealth v. Farquharson**, 467 Pa. 50, 354 A.2d 545 (Pa. 1976) [sic]. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

> [**Commonwealth v.**] **Widmer**, 560 Pa. [308] at 321-22, 744 A.2d [745] at 753 [(2000)] (emphasis added).

> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

>> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

> **Widmer**, 560 Pa. at 322, 744 A.2d at 753 (quoting **Coker v. S.M. Flickinger Co.**, 533 Pa. 441, 447, 625 A.2d 1181, 1184-85 (1993)).

**Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013).

On August 28, 2017, the trial court authored a comprehensive opinion addressing Hunter's weight of the evidence claim. We have reviewed both the trial court's opinion as well as the certified record and we discern no abuse of discretion in the trial court's denial of Hunter's motion for a new trial based upon the claim the verdict was against the weight of the evidence. The parties are directed to attach a copy of the trial court's August 28, 2017 opinion in the event of further proceedings.

Hunter's final claim is that the trial court erred in failing to suppress statements she made to the police. Hunter argues she did not knowingly and voluntarily waive her **Miranda**[8] rights. Hunter is not entitled to relief.

> We note our standard of review when addressing a challenge to the denial of a suppression motion:
>
> > We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law.
>
> **Commonwealth v. Arter**, 637 Pa. 541, 151 A.3d 149, 153 (2016) (citation omitted). "[I]t is the sole province of the suppression court to weigh the credibility of witnesses," and "the suppression court judge 'is entitled to believe all, part or none of the evidence presented.' " **Commonwealth v. Blasioli**, 454 Pa.Super. 207, 685 A.2d 151, 157 (1996), affirmed, 552 Pa. 149, 713 A.2d 1117 (1998).

_____

[8] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

***Commonwealth v. Fitzpatrick***, 181 A.3d 368, 373 (Pa. Super. 2018) (footnote omitted).

The trial court held a hearing on Hunter's motion to suppress on October 13, 2015 at which time experts for both Hunter and the Commonwealth testified regarding Hunter's state of mind when she waived her ***Miranda*** rights. Each expert posited reasons why Hunter had or had not voluntarily waived her rights. Ultimately, after considering the testimony and applicable legal authority, the trial court found that Hunter clearly had knowingly and voluntarily waived her rights. The trial court's decision is based upon evidence of record, in the form of the expert testimony of Dr. Gerald Cooke, a forensic psychologist. As such, there are no grounds to reverse the trial court's well considered decision. In the event of further proceedings, the parties are directed to attach a copy of the trial court's January 8, 2016, opinion addressing Hunter's motion to suppress.

In the event of further proceedings, the parties are directed to attach copies to the trial court opinions dated January 8, 2016, August 28, 2017, and November 9, 2017.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/07/2018

- 11 -