J-A05023-18 & J-A05024-18

2018 PA Super 55

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON FITZPATRICK | : | |
| | : | |
| Appellant | : | No. 2636 EDA 2015 |

Appeal from the Judgment of Sentence August 14, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004733-2012

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON FITZPATRICK | : | |
| | : | |
| Appellant | : | No. 1407 EDA 2016 |

Appeal from the Judgment of Sentence April 21, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004733-2012

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS*, P.J.E.

OPINION BY MURRAY, J.:                                   **FILED MARCH 14, 2018**

Aaron Fitzpatrick (Appellant) appeals, at docket 2636 EDA 2015, from

the judgment of sentence entered on August 14, 2015, after a jury convicted

_____

* Former Justice specially assigned to the Superior Court.

him of murder of the first degree, murder of the third degree of an unborn child,[1] and other offenses. Appellant additionally appeals, at 1407 EDA 2016, from the judgment of sentence entered on April 21, 2016, following the trial court's *sua sponte* modification of Appellant's sentence for murder of the third degree of an unborn child. Upon careful review, we dismiss as moot the appeal docketed at 2636 EDA 2015, and affirm the judgment of sentence at 1407 EDA 2016.

The trial court stated:

> The evidence adduced at trial established that on February 16, 2012, at or about 2:25 am, the decedent, Tiffany Gillespie, was found in the basement of the residence located at 2327 Mildred Street. She was pronounced dead on the scene. The cause of death was a gunshot wound to her head.
>
> When detectives arrived at the residence, they found a cellular phone near the decedent. Detective John Keen looked through the phone and found one number consistently showing in the phone's call log. Detective Keen radioed back to his superiors and requested that someone be assigned to pull the phone information for both the phone number in the call log and the phone which was in his possession. Shortly thereafter, Detective Keen was given the results of the search into the subscriber of the phone in the call log; [Appellant] was the owner of the cellular phone number within the call logs of the phone Detective Keen had secured.

Trial Court Opinion, 2/6/17, at 2 (citations to notes of testimony omitted).

As discussed in further detail *infra*, Appellant subsequently provided two signed statements to the police, admitting that he shot the decedent.

---

[1] 18 Pa.C.S.A. §§ 2502(a), 2604(c)(1).

Appellant was charged with murder, murder of an unborn child, and related offenses. Appellant filed a motion to suppress both of his statements to police, and the trial court conducted a hearing on August 4, 2015. The trial court explained:

> [Appellant's] basis for the motion was: (1) that [Appellant] was not given proper **Miranda**[2] warnings and (2) that [Appellant's] statement[s] were the product of improper influences or exertions by the interrogating detectives. These "influences" allegedly included both promises and force exerted by the interrogating detectives, specifically Detective Dove. By way of background, between the preliminary hearing and [suppression] hearing, Detective Dove [was] removed from his position for improprieties he engaged in by covering up a murder allegedly committed by a paramour. Although subpoenaed, under the advice of [his] counsel, [Detective Dove] asserted his Fifth Amendment right against self-incrimination. Detective Harkins was the other detective who sat in on both interviews with [Appellant], as noted on the face of both interviews. Detective Harkins and [Appellant] testified at the motion hearing regarding the interviews and the statements. Before Mr. Dove asserted his Fifth Amendment right, [Appellant] intended to call Mr. Dove to question him about several collateral improprieties that he had engaged in while a detective in an effort to cast doubt on the weight and/or legitimacy of the interviews.
>
> Detective Harkins testified that at or near 9:30 am of the date of the murder, he and fellow detectives were on the 600 block of Emily Street to execute a search warrant on [Appellant's] mother's home. While there, Detective Keen spoke with [Appellant's] mother. She stated that [Appellant] was on his way to the First Police District. Detective Keen called the First Police District to inform them that [Appellant] may be arriving there and that he should be notified if and when [Appellant] arrived. When [Appellant] arrived, Detective Keen requested that uniformed officers transfer [Appellant] to the Homicide Unit. Detectives Dove and Harkins were at a diner "grabbing a meal" when they were informed that [Appellant] had arrived at the Homicide Unit.

---

[2] **See Miranda v. Arizona**, 384 U.S. 436 (1966).

Both detectives went to the Homicide Unit to meet up with and interview [Appellant] when he arrived.

When both detectives arrived, they saw [Appellant] sitting on a bench in the waiting area. [Appellant] was not in handcuffs when they arrived. They escorted [Appellant] into the secure area of the Homicide Unit and took him to their Lieutenant's office for the purpose of an interview. After obtaining some biographical information from [Appellant], Detective Dove, in Detective Harkins' presence, presented [Appellant] with a 75-331 form which stated [Appellant's] *Miranda* warnings and which informed him that the purpose of the interview was to question [Appellant] about the murder of decedent. If [Appellant] was willing to waive his panoply of rights, Detective Dove instructed him to sign the form; [Appellant] did so. At all times throughout both interviews, Detective Dove asked questions and recorded [Appellant's] answers. This interview and subsequent interview documented that both Detectives Dove and Harkins were present and conducting the questioning.

The *Miranda* warnings were presented to and executed by [Appellant] at 11:50am. [Appellant's] first interview was memorialized starting at 1:14 pm and ending at about 2:25 pm. During that gap of over an hour, Detective Harkins testified that he was present with Detective Dove during the interview and that [Appellant's] responses to informal questioning were general denials about his involvement. By 1:14 pm, [Appellant] admitted to the killing; he claimed that the weapon had been tossed into a sewer . . . and that he had incinerated the clothes he wore that night. Using Google Maps, [Appellant] showed both detectives the corner at which he allegedly tossed the weapon. Detective Harkins exited the Lieutenant's office for a short period of time to inform Detective Keen of [Appellant's] statement [as to the location of the gun]. Detective Harkins returned to the Lieutenant's office and sat in on the remainder of the interview. When [Appellant] adopted the interview, he signed the first two pages of the complete interview and printed his name on the remaining pages. At the conclusion of the interview, [Appellant] was moved from the Lieutenant's office to Interview Room B and was left by himself.

Detective Keen called another detective . . . and requested that he check the sewer for the weapon. When the weapon was not found, Detective Keen informed Detectives Dove and Harkins. Detectives Dove and Harkins initiated a second interview which

- 4 -

began at 2:58 pm and concluded at 3:30 pm. [The d]etectives questioned [Appellant] about the truthfulness of his first recorded interview. [Appellant] admitted that he had not been fully truthful; he informed the detectives that the weapon and clothes were at 2012 South Eighth Street. He informed them exactly where the items could be found. Upon execution of a search warrant, both the gun and clothes were found exactly where [Appellant] stated the items would be located.

[Appellant] testified at the motion hearing. [He] denied that the signature on the first two pages of the first interview record were his . . . [but] did admit that he had signed the last page . . . but only because Detective Dove told him to. [Appellant] also stated that Detective Harkins had never been in the interview room at all and that he only saw Detective Harkins standing outside the Lieutenant's office. [Appellant] stated that Detective Dove threatened him . . . that if he did not sign the document, "it" would be over for him. [Appellant] also stated that Detective Dove used physical force and, in so doing, knocked out [Appellant's] front tooth.

\* \* \*

Based on credibility, this court found that the Commonwealth had met its burden and denied [Appellant's] motion to suppress.

Trial Court Opinion, 2/6/17, at 5-8 (citations to notes of testimony omitted).

Subsequently, at the conclusion of trial on August 14, 2015, the jury found Appellant guilty of first degree murder, third degree murder of an unborn child, carrying a firearm without a license,[3] and possessing an instrument of crime.[4] That same day, the trial court sentenced Appellant to, *inter alia*, life imprisonment for the first-degree murder conviction. The court also imposed a concurrent term of life imprisonment for third-degree murder

---

[3] 18 Pa.C.S.A. § 6106(a)(1).

[4] 18 Pa.C.S.A. § 907(a).

of an unborn child, noting that the law required a mandatory life sentence because Appellant also had, in this case, another murder conviction.[5]  N.T., 8/14/15, at 9; **see** 42 Pa.C.S.A. § 9715(a) (generally, any person convicted of murder of the third degree who has previously been convicted at any time of murder shall be sentenced to life imprisonment).

Appellant did not file a post-sentence motion, but on August 20, 2015, filed a timely notice of appeal, docketed in this Court at 2636 EDA 2015.  On April 21, 2016, while Appellant's appeal was pending, the trial court *sua sponte* modified his sentence for the third degree murder of an unborn child conviction; the court vacated the term of life imprisonment and imposed 20 to 40 years' imprisonment, to run concurrently with the life sentence for first-degree murder.  Although the trial court did not provide a reason for this modification, we note that on October 5, 2015, this Court issued a decision in **Commonwealth v. Haynes**, 125 A.3d 800 (Pa. Super 2015), holding that third-degree murder of an unborn child did not trigger a mandatory life sentence under 42 Pa.C.S.A. § 9715(a).  **Id.** at 804-06.

On May 10, 2016, Appellant filed an appeal, docketed at 1407 EDA 2016, from the April 21, 2016 resentencing order.  The trial court directed Appellant to file a Pa.R.A.P. 1925 concise statement of errors complained of on appeal, and Appellant complied.  In this Court, Appellant, as well as the

---

[5] The trial court additionally imposed concurrent sentences of 3½ to 7 years' imprisonment for carrying a firearm without a license and 2½ to 5 years for possessing an instrument of crime.

Commonwealth, have filed identical briefs at both dockets.

In both appeals, Appellant raises the following issues for our review:

[1.] Whether the court abused its discretion when it denied [A]ppellant's motion to suppress his two written statements when he testified at the motion's hearing that the Homicide Detectives threatened, physically abused and coerced him to make the alleged statements all in violation of his 5th and 14th Amendment rights under both the United States and Pennsylvania Constitutions.

[2.] Whether the verdict was against the sufficiency of the evidence to prove [A]ppellant guilty beyond a reasonable doubt.

Appellant's Brief at 6.

Preliminarily, we note that the trial court lacked jurisdiction to modify its original sentencing order. *See* 42 Pa.C.S.A. § 5505 (court, upon notice to the parties may modify or rescind any order within 30 days after its entry "if no appeal from such order has been taken or allowed"). Nonetheless, our Supreme Court has held that Section 5505 does not impinge on a trial court's inherent power to correct patent errors despite the lack of traditional jurisdiction. *Commonwealth v. Holmes*, 933 A.2d 57, 60 (Pa. 2007). In *Holmes*, our Supreme Court approved of the trial court's *sua sponte* correction of an illegal sentence despite the fact that the defendant had already taken an appeal. *Id.* at 66.

As stated above, after Appellant took a timely appeal from his August 14, 2015 judgment of sentence, this Court decided *Haynes*, a decision which would have applied to Appellant's appeal and rendered illegal his term of life imprisonment for third degree murder of an unborn child. *See In re Cain*,

590 A.2d 291, 292 (Pa. 1991) ("An issue can become moot during the pendency of an appeal due to . . . an intervening change in the applicable law."); **Haynes**, 125 A.3d at 804-06. Accordingly, pursuant to **Holmes**, we hold that the trial court did not err in *sua sponte* modifying Appellant's sentence for third degree murder of an unborn child to comply with **Haynes**. **See Holmes**, 933 A.3d at 66. We thus dismiss as moot the appeal docketed at 2636 EDA 2015, and proceed to the merits of the appeal at 1407 EDA 2016.

Appellant first argues that the trial court erred in denying his motion to suppress the two written statements he made to police, claiming that his statements were involuntary. Appellant's Brief at 12. Specifically, Appellant cites his testimony at the suppression hearing that "he was coerced, physically abuse [sic] and threated [sic] by Detective Dove," and he was "punched in the mouth losing a tooth." **Id.** (citations to notes of testimony omitted).

We note our standard of review when addressing a challenge to the denial of a suppression motion:

> We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.[6] Where the record

---

[6] We recognize that a majority of our Supreme Court held that, in the absence of exceptional circumstances, we limit the scope of appellate review for suppression denials to the suppression record, rather than the record as a whole. **In re L.J.**, 79 A.3d 1073, 1087 (Pa. 2013). However, a plurality of the Supreme Court joined Justice Baer's conclusion that the new rule of law should apply prospectively to "all litigation commenced Commonwealth-wide after [October 30, 2013]." This Court has comprehensively addressed the issue of prospective application and has adopted the plurality rationale set

supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law.

***Commonwealth v. Arter***, 151 A.3d 149, 153 (Pa. 2016) (citation omitted).

"[I]t is the sole province of the suppression court to weigh the credibility of witnesses," and "the suppression court judge 'is entitled to believe all, part or none of the evidence presented.'" ***Commonwealth v. Blasioli***, 685 A.2d 151, 157 (Pa. Super. 1996), affirmed, 713 A.2d 1117 (Pa. 1998).

"It is well-established that when a defendant alleges that his confession was involuntary, the inquiry becomes not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess." ***Commonwealth v. Yandamuri***, 159 A.3d 503, 525 (Pa. 2017) (internal citations omitted). Voluntariness is the touchstone inquiry when deciding a motion to suppress a confession, and voluntariness is determined upon review of the totality of the circumstances. ***Commonwealth v. Nester***, 709 A.2d 879, 882 (Pa. 1998). In assessing the totality of the circumstances, the suppression court should consider: "the duration and means of the interrogation; the defendant's

_____

forth in ***L.J.*** ***Commonwealth v. Eichler***, 133 A.3d 775, 778-780 (Pa. Super. 2016), ***appeal denied***, 161 A.3d 791 (Pa. 2016). Accordingly, as the instant matter commenced prior to the Supreme Court's issuance of ***L.J.***, our scope of review includes both the suppression record and the trial record. ***See id.*** at 780.

physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and all other factors that could drain a person's ability to resist suggestion and coercion." *Yandamuri*, 159 A.3d at 525.

Here, the trial court expressly credited Detective Harkins' testimony regarding the voluntariness of Appellant's statements. N.T., 8/4/15, at 142 ("[T]his is a credibility call [and] I think that when I just balance the credibility issues here, I find that the Commonwealth has met its burden . . . "). After review of the record as a whole, we conclude that the trial court did not err in denying Appellant's motion to suppress his two written statements. At the suppression hearing, Detective Harkins testified that Appellant received *Miranda* warnings and was cooperative with the investigation. *Id.* at 14. Detective Harkins also testified that neither he nor Detective Dove touched Appellant at any time during the investigation, nor did they promise anything to him in exchange for his testimony. N.T., 8/7/15, at 49; N.T., 8/4/15, at 14-15. Contrary to Appellant's claim at the suppression hearing, both Detective Harkins' testimony and documentation of the interview indicated that Detective Harkins was present during the interviews. The trial court explicitly credited Detective Harkins' testimony and discredited Appellant's claims to the contrary. *See* Trial Court Opinion at 9 ("[t]his court finds the testimony of Detective Harkins credible"). We may not, as Appellant's argument would require, supplant the trial court's credibility findings.

Consequently, we hold that the trial court properly denied Appellant's suppression motion.

In his second issue, Appellant purports to challenge the sufficiency of the evidence supporting his convictions. Specifically, he contends: "**If** the Superior Court rules that [A]ppellant's statements were involuntary then the verdict is against the sufficiency of the evidence." Appellant's Brief at 10 (emphasis added). In making his conditional argument, Appellant concedes that "[a]s it stands, from the trial the evidence is sufficient based on all inferences in favor of the verdict winner." *Id.* at 13.

The Commonwealth responds that Appellant's argument does not present a proper sufficiency claim, where the sufficiency of the evidence is not assessed on a diminished record, but rather on all the evidence presented at trial. Commonwealth's Brief at 13, *citing* **Commonwealth v. Smith**, 568 A.2d 600, 603 (Pa. 1989) (in assessing the sufficiency of evidence, we are called upon to consider all of the testimony presented during trial, without consideration as to the admissibility of that evidence). We agree. Appellant concedes that there was sufficient evidence to support his convictions. Accordingly, we find no merit to Appellant's claim.

Appeal at 2636 EDA 2015 is dismissed as moot.

Judgment of sentence at 1407 EDA 2016 affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/14/18