J. A20010/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| GEORGE GENE ISHLER JR., | : | No. 842 MDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered April 23, 2018,
in the Court of Common Pleas of Centre County
Criminal Division at Nos. CP-14-CR-0001383-2016,
CP-14-CR-0001384-2016

BEFORE:  GANTMAN, P.J.E., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED JANUARY 06, 2020**

George Gene Ishler, Jr., appeals from the April 23, 2018 aggregate judgment of sentence of life imprisonment without the possibility of parole, imposed after a jury found him guilty of first-degree murder, criminal conspiracy, tampering with or fabricating physical evidence, and unsworn falsification to authorities.[1]  After careful review, we affirm the judgment of sentence.

On September 22, 2016, appellant and co-defendant Danelle Rae Geier, his half-niece,[2] were charged with first-degree murder and related offenses in connection with the death of Pennsylvania State University Professor

---

[1] 18 Pa.C.S.A. §§ 2502(a), 903, 4910(2), and 4904(a)(1), respectively.

[2] The record reflects that Geier is the daughter of appellant's half-sister.

Ronald V. Bettig ("the victim"), whose body was discovered on the floor of a quarry pit in Centre County, Pennsylvania on August 17, 2016. Appellant confessed to the Pennsylvania State Police that he conspired with Geier to push the victim off the quarry wall and stage the scene to make it look like it had been an accident or suicide. The Commonwealth gave notice of its intention to consolidate appellant's case with Geier's case on September 22, 2016.

The trial court summarized the remaining procedural history of this case as follows:

> [Appellant] filed an omnibus pre-trial motion[,] which included a motion to sever and a motion to suppress on November 11, 2016. The court denied the motion to sever by order dated March 23, 2017, and the motion to suppress by opinion and order dated May 18, 2017. [Appellant] filed a motion in limine seeking to exclude testimony regarding a sexual relationship between [appellant] and [Geier] on September 29, 2017, which was granted on April 10, 2018. A jury trial was held April 16, 2018 through April 23, 2018, at the conclusion of which a jury returned a verdict of guilty on all charges for both defendants. Both [appellant] and [Geier] were immediately sentenced to life in prison without the possibility of parole.
>
> At trial, the Commonwealth introduced text messages between [appellant] and [Geier] where they repeatedly stated they loved one another, and the Commonwealth asked [appellant] if he ever engaged in sexual relations with [Geier]. [Geier] testified at trial that she was unaware of any plan by [appellant] to kill the victim, and that when she learned [appellant] killed the victim, she did not report it to the police because [appellant] allegedly raped her and threatened her to keep quiet.

Trial court opinion, 10/3/18 at 2 (extraneous capitalization omitted; emphasis added).

Following the imposition of sentence, appellant filed a timely notice of appeal. On May 29, 2018, the trial court directed appellant to file a concise statement of errors complained of on appeal, in accordance with Rule 1925(b), within 21 days. Appellant filed his Rule 1925(b) statement on September 24, 2018, and the trial court filed its Rule 1925(a) opinion on October 3, 2018.

Appellant raises the following issues for our review:

> I. Whether the [trial] court erred in denying [a]ppellant's motion to sever when the defenses were clearly antagonistic?
>
> II. Whether the [suppression] court erred in denying [appellant's] motion to suppress his statements?
>
> III. Whether the [trial] court erred in allowing the Commonwealth to introduce statements regarding [a]ppellant's sexual comments to [Geier's] sister (confusing her for [Geier]) despite the [trial] court's pre-trial ruling to the contrary?

Appellant's brief at 5 (extraneous capitalization omitted).

Preliminarily, we must address the timeliness of appellant's Rule 1925(b) statement, which was filed long after the expiration of the 21-day filing period. The record contains no indication that appellant sought, or that the trial court granted, an extension of time for filing. However, the trial court accepted appellant's untimely Rule 1925(b) statement and subsequently filed its Rule 1925(a) opinion on October 3, 2018, addressing

the merits of appellant's three claims therein. (**See** trial court opinion, 10/3/18 at 2-5.) Accordingly, we may consider the merits of appellant's three claims on appeal. **See Commonwealth v. Burton**, 973 A.2d 428, 432-433 (Pa.Super. 2009) (holding that, while the untimely filing of a Rule 1925(b) statement is **per se** ineffectiveness of counsel, this court may decide the appeal on its merits if the trial court had an opportunity to prepare its Rule 1925(a) opinion once the untimely Rule 1925(b) statement was filed).

Appellant first argues that the trial court erred by denying his pre-trial motion to sever his case from that of Geier, on the basis that their respective defenses were "clearly antagonistic." (Appellant's brief at 9.) We disagree.

"A motion for severance is addressed to the sound discretion of the trial court, and . . . its decision will not be disturbed absent a manifest abuse of discretion." **Commonwealth v. Dozzo**, 991 A.2d 898, 901 (Pa.Super. 2010) (citation omitted), **appeal denied**, 5 A.3d 818 (Pa. 2010). Pennsylvania Rule of Criminal Procedure 583 governs the severance of offenses and provides that the trial court "may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583. Our supreme court has formulated the following three-part test for deciding the merits of a motion to sever:

> [1] whether the evidence of each of the offenses
> would be admissible in a separate trial for the other;
> [2] whether such evidence is capable of separation by
> the jury so as to avoid danger of confusion; and, if the

> answers to these inquiries are in the affirmative,
> [3] whether the defendant will be unduly prejudiced
> by the consolidation of offenses.

*Commonwealth v. Melvin*, 103 A.3d 1, 29 (Pa. 2014) (citations omitted; brackets in original).

Upon review, we discern no abuse of discretion on the part of the trial court in denying appellant's motion to sever, as the record establishes that appellant failed to satisfy the three-part test set forth in *Melvin*. Notably, both appellant and Geier were charged as co-conspirators in the victim's murder, and it is well settled that "[w]hen conspiracy is charged, a joint trial generally is advisable." *Commonwealth v. Brown*, 925 A.2d 147, 161 (Pa. 2007) (citation omitted). Additionally, the evidence in this matter was clearly "capable of separation by the jury so as to avoid danger of confusion," *Melvin*, 103 A.3d at 29, as both defendants had previously confessed to their involvement in the victim's murder; their confessions were admitted at trial; and the jury was instructed multiple times that each defendant's statement was to be used only against the individual who made it. (*See* notes of testimony, 4/16/18 at 138; 4/17/18 at 82, 89; *see also* Pennsylvania Suggested Standard Jury Instructions 3.12.) Moreover, the mere fact that there was hostility between the co-defendants' defenses at trial and that they presented conflicting versions as to what transpired on the date of the victim's death does not amount to "undue prejudice" warranting separate trials. *Melvin*, 103 A.3d at 29. On the contrary, "the fact that defendants have

conflicting versions of what took place, or the extents to which they participated in it, is a reason for rather than against a joint trial because the truth may be more easily determined if all are tried together." ***Commonwealth v. Housman***, 986 A.2d 822, 833 (Pa. 2009) (citation, internal quotation marks, and parentheticals omitted), ***cert. denied***, 562 U.S. 881 (2010). Based on the foregoing, we discern no abuse of discretion on the part of the trial court in denying appellant's motion for severance.

Appellant next argues that the suppression court erred in denying his motion to suppress the confession he gave to police on the basis that it was obtained in violation of ***Miranda***[3] and was "made under duress, coercion, or with non-unfulfilled promises by law enforcement." (Appellant's brief at 12-16.)

Our standard of review when addressing a challenge to a trial court's denial of a suppression motion is well settled.

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those]

---

[3] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

findings and may reverse only if the court's legal conclusions are erroneous.

***Commonwealth v. Jones***, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted; brackets in original), ***appeal denied***, 135 A.3d 584 (Pa. 2016).

Regarding the voluntariness of a confession,

[i]t is well-established that when a defendant alleges that his confession was involuntary, the inquiry becomes not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess. Voluntariness is the touchstone inquiry when deciding a motion to suppress a confession, and voluntariness is determined upon review of the totality of the circumstances. In assessing the totality of the circumstances, the suppression court should consider: the duration and means of the interrogation; the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and all other factors that could drain a person's ability to resist suggestion and coercion.

***Commonwealth v. Fitzpatrick***, 181 A.3d 368, 373-374 (Pa.Super. 2018) (citations and internal quotation marks omitted), ***appeal denied***, 191 A.3d 740 (Pa. 2018).

Additional relevant factors include the following:

the accused's age and level of education and experience; his extent of previous experience with the police; whether the accused was advised of his constitutional rights; whether he was injured, ill, drugged, or intoxicated when he confessed; whether he was deprived of food, sleep or medical attention, and whether he was abused or threatened with abuse.

***Commonwealth v. Yandamuri***, 159 A.3d 503, 525 (Pa. 2017) (citation omitted).

Instantly, the suppression court authored a comprehensive and well-reasoned opinion in support of its May 18, 2017 order denying appellant's ***omnibus*** motion to suppress. Upon review, we find that the suppression court's factual findings are supported by the record and the legal conclusions drawn from those facts were correct. ***See Jones***, 121 A.3d at 526; ***see also*** suppression court opinion, 5/18/17 at 1-5.) Specifically, the record supports the suppression court's determination that appellant was properly advised of his ***Miranda*** warnings prior to giving a statement to Pennsylvania State Police Trooper Brian Wakefield. (***See*** suppression court opinion, 5/18/17 at 5-6.) Contrary to appellant's contention, the totality of the circumstances further supports the suppression court's conclusion that a renewal of these warnings following cigarette breaks was unwarranted. The suppression court found:

> [T]he smoke breaks were held just outside where the original ***Miranda*** warnings were given, the Officers were the same, and the subject matter was not substantially different from the topic when the original warnings were given. The time from the initial ***Miranda*** warnings to [appellant's] recorded statement was under four hours.

***Id.*** at 6.

We further conclude that the record supports the suppression court's determination that "the totality of the circumstances demonstrates [that

appellant's] decision to confess was voluntary." (*Id.* at 7.) As the suppression court properly found,

> [t]he interview was not lengthy prior to the confessions, ample breaks were given, and [appellant] was not prevented from leaving. [Appellant] was not handcuffed, was in an unlocked room with the Officers who were in plainclothes and not brandishing weapons or threatening [appellant] in any way. The Officers were friendly with [appellant], going on smoke breaks with him, and conversed with him casually. [Appellant] was not denied food, sleep, or medication. The only factor that would negate the voluntariness of the confession would be if the Officers made [appellant] a promise they did not intend to keep in order to induce him into confessing.
>
> . . . .
>
> . . . . Here, [Detective Chris] Weaver told [appellant] he would see what he could do about letting [appellant] see his "old lady" one more time, and advised [appellant] the police may be able to have a controlled meeting with [appellant's] girlfriend at the barracks. [Appellant] even stated that they will not let him and Weaver advised it was unlikely but said he would check with his supervisor. [Appellant] still proceeded to confess knowing it was unlikely he'd get to see his girlfriend one more time. Weaver testified he never affirmatively promised [appellant] anything. Wakefield testified that when [appellant] and Weaver returned from the final smoke break, [appellant] said he wanted to come clean but was hoping to see his girlfriend one more night. Wakefield did not promise him that he could see his girlfriend for one more night but only told him he could not make that decision. After [appellant] confessed, he did not ask to see or speak to his girlfriend.

*Id.*

Based on the foregoing, appellant's second claim of error must fail.

In his final claim, appellant argues that the trial court abused its discretion in permitting the Commonwealth to introduce text messages between appellant and Geier wherein appellant made "sexual comments to [Geier's] sister (confusing her for [Geier])," given that the trial court had previously granted appellant's motion *in limine* to exclude any testimony evidencing an alleged sexual relationship between the parties. (Appellant's brief at 17.) Appellant's entire argument on this issue consists of a single paragraph devoid of citation to any legal authority nor the pertinent notes of testimony. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Commonwealth v. Rahman*, 75 A.3d 497, 504 (Pa.Super. 2013) (citation omitted). Accordingly, we find that appellant has waived this claim.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/06/2020