J-S49010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH GEORGE GAZZAM | : | |
| | : | |
| Appellant | : | No. 1409 WDA 2019 |

Appeal from the Judgment of Sentence Entered July 31, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0007428-2018

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 23, 2020**

Appellant, Joseph George Gazzam, appeals from the judgment of sentence entered on July 31, 2019, following his bench trial convictions for third-degree murder, endangering the welfare of a child, and recklessly endangering another person.[1]  We affirm.

We briefly summarize the facts and procedural history of this case as follows.   On November 12, 2017, at approximately 12:30 p.m., police responded to an emergency telephone call from Appellant that his four-month-old daughter was unresponsive at his residence in Mount Lebanon, Pennsylvania.  Despite efforts at resuscitation, the child died a short time later at a local hospital.  Appellant told various witnesses that the child

_____

[*] Former Justice specially assigned to the Superior Court.

[1]  18 Pa.C.S.A. §§ 2502(c), 4304(a)(1), and 2705, respectively.

had fallen off a bed. A subsequent autopsy revealed that the victim suffered blunt force trauma to the head and trunk, subdural hemorrhages and hematomas to the brain, lacerations to her heart, liver, and kidney, and a fractured arm. The medical examiner opined that those injuries were not consistent with a fall from a bed, that the victim died from blunt force trauma to the head and trunk, and that the manner of death was homicide. Relevant to this appeal, as part of their investigation, Allegheny County Police Department Detectives James Fitzgerald and Tony Perry conducted recorded interviews of Appellant on separate occasions on November 12, 2017 and November 13, 2017. Appellant admitted that he struck the child multiple times with his fists and then made an emergency telephone call once she stopped breathing.

The Commonwealth subsequently charged Appellant with criminal homicide, endangering the welfare of a child, and recklessly endangering another person. On April 29, 2019, Appellant entered a general guilty plea to the charges. The trial court held a two-day, non-jury, degree-of-guilt trial commencing on June 17, 2019. Prior to trial, Appellant filed a motion in *limine* to preclude the Commonwealth from presenting the recorded police interviews at trial, arguing that his admissions were coerced. The trial court denied relief and allowed the Commonwealth to present the recorded police interviews as evidence at the degree-of-guilt trial. At the conclusion of trial, the court found Appellant guilty of the aforementioned offenses. On July 31, 2019, the trial court sentenced Appellant to an aggregate term of 21 to 42

years of imprisonment followed by a consecutive term of 8 years of probation.

This timely appeal resulted.[2]

On appeal, Appellant presents the following issue for our review:

Did the [trial] court err when it denied [Appellant's] request to preclude the use of video [recordings] and [written] transcripts from his [second] police interrogation because [Appellant's] statement was involuntary and a result of police coercion and therefore a violation of his rights to due process? Specifically, due to the nature of the questioning, and since the detectives provided the majority of the information during the interrogation, was not [Appellant] badgered into making a confession in this case?

Appellant's Brief at 6.

In sum, Appellant argues:

[Appellant] was alone with [the victim] when she died. Therefore, [Appellant's] statements to police were the **only** evidence as to how death occurred. However, in part due to his status as an Army vet[eran] with [Post Traumatic Stress Disorder (PTSD)], [Appellant] drank a lot of beer. He also sometimes did cocaine. Even with this self-medication, at times his PTSD got the best of him and [Appellant] would black out. The trial court heard that [Appellant] was usually not a violent person - about the only time [Appellant] was violent was when he was drinking or in a blackout episode.

Police detectives in this case knew that [Appellant] bore responsibility for [the victim's] death. Nevertheless, over the course of two days, the detectives interrogated [Appellant]. They repeatedly refused to accept [Appellant's] answers that he "did not remember" or "didn't know" what had happened. Detectives

_____

[2] The trial court denied Appellant's timely filed post-sentence motions by order entered on August 12, 2019. Thereafter, Appellant filed a timely notice of appeal on September 11, 2019. On September 12, 2019, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After permitted extensions, Appellant filed a timely Rule 1925(b) statement on October 30, 2019. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 6, 2020.

talked and talked at [Appellant], telling him to "act like a man" and "take care of" his daughter by confessing. [Appellant] could not confess to things he [did not recall]. Yet officers spoke with [Appellant] for many uninterrupted minutes at a time, giving some details of the case and making factual assumptions. As one example, [Appellant] did not remember taking [the victim] from her bassinet, but a detective got him to say that he had "yanked" [her] with great force from the bassinet.

The totality of the circumstances, including that the detectives took [Appellant] to the police station straight from his daughter's death bed without even letting him go home to change or to eat, render any and all statements made by [Appellant] the product of their manipulative and coercive tactics. [Appellant's] motion in *limine* seeking to preclude the use of this evidence at his trial should have been granted. Further, as this was the only evidence offered below, this error is not harmless beyond a reasonable doubt. [Appellant] is entitled to a new trial at which this evidence is excluded.

Appellant's Brief at 25-26 (emphasis in original).

Initially, we note that the Commonwealth claims that Appellant "waived his current claim challenging the voluntariness of his confession because he failed to present it in his [m]otion in [*l*]*imine* to the [t]rial [c]ourt." Commonwealth's Brief at 20. The Commonwealth contends Appellant "did not specifically claim that the confession was involuntary" and, instead, "argued that the confession should be excluded for materially different reasons." ***Id***. at 22. Upon our review, Appellant sought to exclude both police interviews, predominantly on hearsay grounds. However, Appellant also averred, "detectives tried to entice/ coerce/ compel [Appellant] to make admissions." Motion in *Limine*, 3/18/2019, at *4, ¶ 13 (unpaginated). The trial court held an evidentiary hearing and ultimately addressed the voluntariness of Appellant's statements to police in its Rule 1925(a) opinion.

- 4 -

For these reasons, we conclude that Appellant properly raised the issue before the trial court, decline to find waiver, and proceed to examine the merits of Appellant's current claim.

Our standard of review, when addressing a challenge to the denial of a suppression motion, is as follows:

> We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law.
>
> It is the sole province of the suppression court to weigh the credibility of witnesses and the suppression court judge is entitled to believe all, part or none of the evidence presented.
>
> It is well-established that when a defendant alleges that his confession was involuntary, the inquiry becomes not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess.
>
> Voluntariness is the touchstone inquiry when deciding a motion to suppress a confession, and voluntariness is determined upon review of the totality of the circumstances. In assessing the totality of the circumstances, the suppression court should consider: the duration and means of the interrogation; the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and all other factors that could drain a person's ability to resist suggestion and coercion.

***Commonwealth v. Fitzpatrick***, 181 A.3d 368, 373–374 (Pa. Super. 2018) (internal citations, quotations, and inapplicable footnote omitted).

Here, the trial court determined:

Clearly, in both interrogation sessions [Appellant] was given appropriate [] warnings [pursuant to **Miranda v. Arizona**, 384 U.S. 436 (1966)] and he voluntarily waived the right to remain silent, which was appropriately documented. He was given water and cigarettes. He was not handcuffed or shackled. He was permitted to use the bathroom. He was never physically threatened or abused. There is no evidence that [Appellant], who was 30 years old, was physically or mentally disabled such that he was unable to understand the implications of [] speaking to the detectives. [Appellant's] contention that he simply agreed with whatever the detectives said is contradicted by the record. The fact that the detectives told Defendant that, given his total recall of all other events, his contention that he blacked out was not credible and his statements that [the victim] fell from the bed were not consistent with the nature and extent of her injuries[. Moreover, the circumstances do] not warrant a finding that [Appellant's] statements were coerced. Considering the totality of the circumstances, there was no basis to conclude that [Appellant's] confession was involuntary or coerced and, therefore, the motion to exclude the confession was appropriately denied.

Trial Court Opinion, 1/6/2020, at 11.

Upon review, we discern no error or abuse of discretion in the trial court's ruling that Appellant's confession was voluntary and not the product of coercion. The trial court properly examined the totality of circumstances regarding the two police interviews, including the duration and means of the interrogations, Appellant's physical and psychological state, the conditions attendant to the detentions, and the attitude exhibited by the police during both interrogations. Appellant does not challenge those trial court determinations. Here, there is simply no evidence that the police drained Appellant's ability to resist suggestion and coercion. Instead, when police confronted Appellant with physical evidence that did not comport with his

original version of events, they continued questioning until Appellant confessed. Based upon our review, we conclude that Appellant's statements to police were voluntary and properly admitted into evidence. As such, Appellant's evidentiary issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/23/2020