J-A26004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES GREGORY WAYNE | : | |
| | : | |
| Appellant | : | No. 273 WDA 2024 |

Appeal from the Judgment of Sentence Entered January 23, 2024
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000513-2022

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES GREGORY WAYNE | : | |
| | : | |
| Appellant | : | No. 1366 WDA 2024 |

Appeal from the Judgment of Sentence Entered January 23, 2024
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000514-2022

BEFORE: BOWES, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED: January 27, 2025**

Charles Gregory Wayne appeals from the aggregate judgments of sentence of fifteen to thirty years in prison arising from his conviction of three counts of possession with intent to deliver ("PWID") and other drug-related offenses. We affirm.

By way of background, the Commonwealth charged Appellant at the two underlying criminal dockets based on evidence obtained after law enforcement executed search warrants at Appellant's residence in April and August of 2021. Before trial, Appellant moved to suppress the evidence seized from the searches in both cases. The trial court made the following factual findings after the ensuing consolidated hearing:

1. Trooper Justin Carman of the Pennsylvania State Police (PSP) has been with PSP for [twelve] years. He has been involved in upward of [fifty] narcotics investigations, as well as [twenty] of his own investigations. He also received training regarding narcotic investigations.

2. Trooper Carman testified that during the investigation of [Appellant], he had interviewed two people (an unnamed source ("US"), and a confidential informant ("CI")) who had purchased heroin from a man named "Chucky."

3. During the investigation, Trooper Carman also interviewed Glenn Williams on April 28, 202[1]. Williams was in custody, and had [twenty-two] bags of heroin. Williams indicated he wanted to "work off the charges" by cooperating.

4. Williams told Trooper Carman he purchased drugs from [Appellant], whom he called "Chucky." Williams said Chucky worked at the Oakwood Cafe, and gave Trooper Carman [Appellant]'s address and phone number. The troopers confirmed the address and phone number with [Appellant]'s probation officer, and also confirmed that [Appellant] worked at the Oakwood Cafe.

5. Williams gave a description of [Appellant], [Appellant]'s residence, his motor vehicle, and [the] amount of drugs at [Appellant]'s residence. Williams said he called [Appellant] on April 28, 202[1], and then purchased [five] grams of fentanyl for $600 from [Appellant] that same day. Williams told Trooper Carman that [Appellant] kept fentanyl, crack[,] and money inside [Appellant]'s residence in his bedroom.

6. Trooper Carman also produced as an exhibit the call log of Williams. The call log showed four calls by Williams to [Appellant] on April 28, 2021, including one at 16:37 p.m., which was approximately the same time Williams told Trooper Carman he purchased the heroin from [Appellant].

7. Trooper Carman applied for a search warrant for [Appellant]'s residence on April 30, 2021. The affidavit contained the above information, as well as information regarding surveillance cameras at the residence. The affidavit also contained information that [Appellant] owned a BMW and a Land Rover. The affiant also stated that [Appellant] had multiple convictions for possessions [sic] of narcotics and PWID from 2000 to 2014.

8. The search warrant was executed on April 30, 2021.

9. During the search, the troopers recovered approximately [twenty-nine] grams of flurofentanyl, [seven] grams of crack, 129 grams of cocaine, and $6,000 cash from [Appellant]'s bedroom (where Williams said [Appellant] kept drugs and money).

10. [Appellant participated in a recorded interview] following the search. He admitted [to] having drugs in his residence, and to selling fentanyl and/or heroin out of Oakwood Cafe. [Appellant] told the troopers he wanted to cooperate with them to minimize his charges. He was not arrested that day.

11. A few months later, members of the PSP vice squad saw [Appellant] making hand-to-hand transactions in a parking lot [of a nearby Rite Aid store]. Based on their experience, the troopers believed [Appellant] was selling drugs.

12. On August 18, 2022, the troopers were conducting surveillance on [Appellant]'s residence. They observed a person enter the residence and leave shortly thereafter (unidentified male, or "U/M"). The troopers believed this was consistent with the sale of drugs.

13. The troopers noticed that a new "Ring doorbell," used for home surveillance, had been installed at [Appellant]'s residence.

14. The troopers thereafter initiated a traffic stop, and arrested [Appellant] on charges stemming from the first search [on April

30, 2021]. [Appellant] was a passenger in a car driven by Terrance Jeffreys. [Appellant] had a small bag of marijuana in his pants, and Jefferys had cocaine.

15. [Appellant] told Trooper Carman that U/M had been to his home "to purchase a little weed." He did not deny that he was the one who sold it to U/M.

16. The PSP then obtained a search warrant for [Appellant]'s residence, which was executed on August 18, 2021. During the search, the PSP recovered [four] ounces of fentanyl. [As indicated above, the Commonwealth charged Appellant with multiple counts of PWID and other drug offenses arising from the April and August searches of Appellant's home.]

17. At the suppression hearing, [Appellant] called . . . Williams as a witness. Williams testified he was friends with [Appellant], and ha[d] known him "all my life."

18. Williams previously pled guilty to two counts of PWID, and received a [ten to twenty-three] month sentence.

19. Williams testified that he lied to the police about obtaining the heroin from [Appellant]. Williams testified he lied to the police to get a deal and get out of jail. He admitted going to [Appellant]'s home on April 28, 2021, the day of the alleged sale, but that he only "smoked weed."

20. Williams admitted on cross-examination that he told the PSP that [Appellant] had [fifty to] 100 grams of fentanyl and that [Appellant] kept a large amount of cash and fentanyl in his bedroom. He described [Appellant] as a drug dealer, and that [he] was "guessing" where [Appellant] kept the drugs and money.

21. [Appellant] also testified that Williams had only been to his home two times, including the day Williams allegedly bought heroin from him. [Appellant] said Williams was only there to smoke marijuana. [Appellant] denied selling or showing Williams any drugs that day.

22. [Appellant] testified [that] he was arrested on August 18, 2021[,] for the April 30, 2021 incident. He refused to consent to a search of his residence. He testified [that] the PSP didn't ask about U/M or about marijuana.

- 4 -

23. Immediately following the [suppression] hearing on November 29, 2022, Williams was arrested for selling narcotics. Later that day, Williams gave a recorded statement admitting he had lied on the witness stand, although he still claimed he did not purchase drugs from [Appellant] on April 28, 2021. The recorded interview was provided to the court.

Findings of Fact and Conclusions of Law, 1/23/23, at 1-4 (cleaned up).

After the suppression hearing, and in conjunction with its findings of fact and conclusions of law, the court entered an order denying Appellant's motion to suppress the evidence seized pursuant to both search warrants. Both cases were consolidated and proceeded to a jury trial.

Immediately before opening statements, Appellant made an oral motion *in limine* to preclude the Commonwealth from introducing certain portions of the recorded statement Appellant made to police following the first search on April 30, 2021. Two of the sections Appellant sought to remove related to his concession that he was contemporaneously selling drugs out of another residence and out of Oakwood Cafe, which were transactions that were not charged as part of these cases. The final challenged component was a remark wherein Appellant stated that he continued to sell drugs because he was addicted to doing so. Notably, while Appellant contended that these statements were improper character evidence in his motion *in limine*, he did not argue that the Commonwealth failed to provide notice of its intent to introduce the evidence.

The court deferred ruling on the motion until it had the opportunity to review the recorded statement in question, which it did following the first day

of trial. On the next day, before the taking of testimony, it ruled that the portions of the recording in dispute were admissible, and thus denied Appellant's motion. The jury subsequently found Appellant guilty of all offenses charged in both cases. The court thereafter sentenced Appellant as indicated hereinabove. Appellant filed a post-sentence motion, which the court denied without a hearing.

Appellant timely appealed,[1] and both he and the trial court complied with Pa.R.A.P. 1925. Appellant presents three issues on appeal:

I. Did the trial court err by ruling that there exists probable cause when a named informant testified in an uncredible [*sic*] manner at the suppression hearing and was subsequently convicted of perjury for that testimony regarding the probable cause for the search warrant?

II. Did the trial court err by ruling that probable cause exists for a second search warrant where the warrant alleges a marijuana drug deal occurred during surveillance and the warrant seeks to seize fentanyl?

III. Did the trial court err in permitting the Commonwealth to offer [Pa.R.E.] 404(b) evidence when the Commonwealth sought to introduce evidence of prior bad acts that did not pertain to the charges set forth at a different residence and business; and offered an incomplete, allegedly sanitized

_____

[1] Appellant filed a single *pro se* notice of appeal from the sentencing order, listing both of the implicated docket numbers. In an order dated October 29, 2024, this Court concluded that Appellant's appeal was timely, but was defective pursuant to **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). Accordingly, we remanded pursuant to **Commonwealth v. Young**, 265 A.3d 462 (Pa. 2021), for Appellant to file separate notices of appeal at each of the docket numbers implicated by the judgments of sentence. Appellant timely complied, and this Court assigned the second notice of appeal a separate docket number. We then consolidated the matters *sua sponte*.

version of the question "why do you deal drugs" and the response "I'm like an addict, I don't know any better"?

Appellant's brief at 1.

In his first two claims, Appellant asserts that the court erred in denying his motion to suppress evidence seized pursuant to the two search warrants executed at his home. In that vein, we have stated:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Davis*, 241 A.3d 1160, 1171 (Pa.Super. 2020) (citation omitted).

With respect to the adequacy of probable cause to support search warrants, this Court has elucidated the following:

Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. The standard for evaluating a search warrant is a "totality of the circumstances" test as set forth in *Illinois v. Gates*, 462 U.S. 213 (1983), and adopted in *Commonwealth v. Gray*, 503 A.2d 921 (Pa. 1985). A magistrate is to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The information offered to establish probable cause must be viewed in a common

- 7 -

sense, nontechnical manner. Probable cause is based on a finding of the probability, not a *prima facie* showing of criminal activity, and deference is to be accorded a magistrate's finding of probable cause.

Probable cause does not demand the certainty we associate with formal trials. Rather, a determination of probable cause requires only that the totality of the circumstances demonstrates a fair probability that contraband or evidence of a crime will be found in a particular place. . . . Similarly, where the evidence consists of the allegations of a police informant who has not previously provided information, probable cause requires only corroboration of principal elements of information not publicly available. As recognized by the U.S. Supreme Court in **Illinois v. Gates**, it is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay.

**Commonwealth v. Manuel**, 194 A.3d 1076, 1081-82 (Pa.Super. 2018) (*en banc*) (cleaned up).

Appellant first attacks the validity of the warrant executed on April 30, 2021. He argues that the information provided to the PSP by Williams was inherently unreliable, based on Williams' subsequent contradictory testimony at the suppression hearing and later admission to police that he lied on the stand. **See** Appellant's brief at 15-18. Appellant highlights that the search warrant failed to indicate if his statement to the PSP was recorded and it did not include information relating to Williams' own criminal investigation concerning the possession of fentanyl. **Id**. at 16. He maintains that if this

Court excludes the information provided by Williams from the affidavit, the warrant must fail for lack of probable cause.[2] *Id*. at 18.

As to this issue, the trial court concluded that Williams provided reliable information to the PSP at the time he was in custody, whereas his testimony at the suppression hearing was incredible. More particularly, it stated:

> After review, the court does not find the testimony of Williams at the hearing to be credible for several reasons. First, Williams' initial statements to the police, especially statements as to [Appellant]'s residence and where [Appellant] kept his drugs and money, were accurate and verified by the search. Second, at the time of Williams' initial statements, Williams knew he was facing serious prison time. He also knew that if he lied to the police, he would not get a break in any sentence. Thus, he had the incentive and motive to tell the truth about [Appellant]. Now, however, he has already pled and served his sentence. Third, the police's independent investigation of [Appellant] corroborated much of Williams' information, including phone logs. Fourth, Williams admitted after the hearing that he had been threatened by [Appellant] and/or his family to change his testimony, and therefore he perjured himself at the hearing. Finally, the court notes [that] he changed his testimony approximately [eighteen] months after the search. For all these reasons, the court does not find his recantation testimony at the hearing to be credible. "Recantation testimony is exceedingly unreliable." *Commonwealth v. Birdsong*, 24 A.3d 319, 327 (Pa. 2011).

Opinion and Order, 1/23/23, at 6 (some capitalization altered). The court also found that none of the cases relied upon by Appellant was dispositive as to this issue, to the extent they involved situations wherein the Commonwealth conceded that information contained within a warrant was false in light of a witness's recantation. *Id*. at 5. It noted that here, the Commonwealth

---

[2] Appellant's only basis for claiming the warrant was deficient is premised upon removing the information provided by Williams.

maintained that Williams gave accurate information prior to execution of the April 30, 2021 warrant.

Upon review, we conclude that the trial court's findings are supported by the record and that it did not err in denying Appellant's motion to suppress. Appellant's contention on appeal is that because Williams recanted at the suppression hearing, this necessarily rendered unreliable any information he provided to police in support of the initial warrant over one year earlier. However, this is not the law. The court aptly recounted that the information initially provided by Williams was detailed, motivated by potentially receiving a lighter sentence, and corroborated upon execution of the search. Williams correctly specified Appellant's address, phone number, vehicle, and employment, where the drugs and cash would be in Appellant's home, and the amount of drugs in the house. The call logs also bolstered Williams' initial statement to police.

On the other hand, at the suppression hearing, Williams had incentive to commit perjury because he was no longer serving a sentence for his drug crimes and was purportedly testifying under threat. Therefore, the court was within its rights to accept as reliable Williams' statements given to police yet reject the testimony at the hearing. *See*, *e.g.*, ***Commonwealth v. Fitzpatrick***, 181 A.3d 368, 374 (Pa.Super. 2018) ("We may not, as Appellant's argument would require, supplant the trial court's credibility findings."). No relief is due.

In his next claim, Appellant contends that the court erred by not suppressing evidence seized pursuant to the August 18, 2021 warrant. He emphasizes case law standing for the proposition that there must be a substantial nexus between the suspected contraband or criminal activity and the home to be searched. *See* Appellant's brief at 19. Appellant states that the only connection between his house and any evidence of a crime was the prior search from April 2021, a drug deal occurring at a Rite Aid parking lot a block away from his home, and an alleged transaction involving marijuana at the entrance of his house. *Id*. He asserts that the requisite evidence relating to any transaction could have been ascertained from the marijuana found in Appellant's pocket during the ensuing traffic stop, and did not require an additional search of his residence. *Id*. at 20-21. Appellant further argues that "probable cause to believe that a man has committed a crime does not necessarily give rise to probable cause to search his home," due to the lack of nexus between his house and the purported crimes. *Id*. at 20 (citing ***Commonwealth v. Nicholson***, 262 A.3d 1276 (Pa.Super. 2021)).

In rejecting this claim, the trial court incorporated its credibility findings as to Williams discussed above and explained its legal analysis thusly:

> The police observed [Appellant] conducting what appeared to be a drug sale [at his front door]. When [Appellant] was stopped a short time later, he admitted the person was at his house "to buy a little weed." While [Appellant] at the hearing testified that he did not sell weed to this person, the court does not find [Appellant]'s testimony at the hearing to be credible. Moreover, a common[-]sense interpretation of [Appellant]'s comments after he was stopped in his vehicle, along with all the other

circumstances, would lead a reasonable police officer to believe that the person was at [Appellant]'s home to purchase, and did purchase, "a little weed." The court thus concludes that the search warrant affidavit from August 18, 2021[,] contained adequate probable cause for the search.

Opinion and Order, 1/23/23, at 7 (cleaned up).

Again, we conclude that the trial court's findings are supported by the record. The information gathered by law enforcement bore out that Appellant appeared to have engaged in multiple drug transactions, both publicly in close proximity to his home and at his residence. Additionally, the affidavit supporting this search warrant contained all the information relating to the initial search conducted by the PSP in April 2021, as well as Appellant's desire to cooperate to potentially reduce the severity of his charges. It therefore included references to Appellant having substantial fentanyl in his home only months before and his admission to selling the same. As the court noted, a "common-sense" interpretation of the search warrant and affidavit supports the conclusion that either illegal substances or proceeds therefrom would be recovered from Appellant's residence, and it was not merely limited to marijuana. Hence, the court did not err in denying Appellant's suppression request as to that search warrant.

In his remaining issue, Appellant argues that the court erred in denying his oral motion *in limine* seeking to preclude the Commonwealth's introduction of certain bad act evidence at trial. We have recounted that "when reviewing the denial of a motion *in limine*, we apply an evidentiary abuse of discretion standard of review." *Commonwealth v. Sami*, 243 A.3d 991, 997

- 12 -

(Pa.Super. 2020) (cleaned up). "The admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion." *Id*. (citation omitted)

Appellant's position depends upon the applicability of Pa.R.E. 404, which provides in pertinent part:

> **(b) Other Crimes, Wrongs, or Acts.**
>
> (1) *Prohibited Uses*.  Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses*.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.
>
> (3) *Notice in a Criminal Case*.  In a criminal case the prosecutor must provide reasonable written notice in advance of trial so that the defendant has a fair opportunity to meet it, or during trial if the court excuses pretrial notice on good cause shown, of the specific nature, permitted use, and reasoning for the use of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b).

Our High Court has noted that "the rule contains a **non-exhaustive** list of purposes, other than proving character, for which a person's other crimes, wrongs, or acts may be admissible." ***Commonwealth v. Carter***, 320 A.3d 140, 148 (Pa.Super. 2024) (emphasis added, quotation marks omitted).  One recognized permissible purpose involves *res gestae*, which allows "the admission of evidence of other crimes or bad acts to tell the complete story."

- 13 -

*Id*. at 149 (citation omitted).  More specifically, "[o]ther acts evidence is admissible under the *res gestae* exception where it formed a part of a chain, or was one of a sequence of acts, or became part of the history of the event on trial, or was part of the natural development of the facts."  *Id*. (citations omitted).

Appellant contends that the court erred in allowing the Commonwealth to introduce three bits of testimony contained within his recorded statement from April 30, 2021:  two concerning his confession to uncharged drug deals and one remark wherein Appellant said "I'm like an addict.  I just can't stop selling drugs."  *See* Appellant's brief at 22.  He first argues that none of the evidence was admissible because the Commonwealth never provided the required advance notice pursuant to Rule 404(b)(3).  *Id*.  Appellant next claims that the purpose of the evidence of the other drug transactions was solely to demonstrate that Appellant was a supplier, inappropriately conveying to the jury that he dealt drugs out of his home on the dates in question.  *Id*. at 22-23.  As to the Appellant's remark about being addicted to selling drugs, he maintains that the Commonwealth was again merely trying to paint him as a dealer to the jury.  *Id*. at 24.  Finally, he avers that allowing introduction of this remark was "highly inflammatory and unjustly prejudicial, particularly with the backdrop of the two other geographic areas [Appellant] alleged to have sold drugs."  *Id*. at 24.

In addressing this issue, the trial court concluded that Appellant's comment about his addiction was admissible pursuant to the exception to

hearsay concerning admissions of a party opponent. *See* Order, 2/20/24. As to the uncharged drug transactions to which Appellant confessed, it determined that they were relevant to the underlying investigation and that Appellant possessed drugs in different locations, which went to his PWID charges. *See* N.T. Trial, 11/14/23, at 6. The court also found that the probative value of the testimony in question outweighed any potential for unfair prejudice. *Id*.

For its part, at trial the Commonwealth contended that the challenged portions of the recorded statement were permissible as *res gestae* evidence because his dealing from another residence and the Oakwood Cafe went to his employment and informed other portions of his statement about drug dealing being his only source of income after he was terminated from his job. *See* N.T. Trial, 11/13/23, at 8-9. It alternatively argued that "[i]nformation related to him selling narcotics out of several areas [during] that timeframe is not [Rule] 404(b) evidence. It is a continuing course of conduct that [Appellant] was engaging in at that time." *Id*. at 9.

After review, we find that the trial court did not abuse its discretion in denying Appellant's motion *in limine*. Initially, as to Appellant's contention that the Commonwealth failed to provide adequate notice pursuant to Rule 404(b)(3), this issue is waived. At no point while presenting his oral motion did Appellant assert that he failed to receive notice. Rather, his challenge before the trial court related solely to whether the evidence was admissible. He cannot raise this new position for the first time on appeal. *See*, *e.g.*,

*Commonwealth v. Faison*, 297 A.3d 810, 826 (Pa.Super. 2023) (concluding that the defendant waived his argument to lack of prompt notice when he objected at trial to the relevance of bad act evidence, but not the notice procedure).

Beyond this, Appellant has not persuaded us that the trial court abused its discretion in permitting the evidence in question. Appellant's statements to the PSP regarding selling drugs out of two other places besides his home, as well as selling because it was like an addiction, went to the *res gestae* of the charged offenses. Particularly, his remark concerning why he continued selling drugs helps explains law enforcement's decision not to arrest him that day or charge him with any offenses following the first search in April 2021, and instead give him a chance to cooperate. Further, the admission to selling out of another residence and the Oakwood Cafe was a natural development of the facts because the underlying investigation was preliminarily spawned by the US and CI who purported to have purchased drugs from Appellant at those locations. This evidence therefore "formed a part of a chain" as to the complete story relating to the charged offenses. *See Carter*, 320 A.3d at 148. Additionally, we find no fault in the court's conclusion that the probative value of this evidence outweighed the potential for unfair prejudice considering the objective strength of the evidence against Appellant, resulting

primarily from the two searches of his home. Thus, the court did not err in denying Appellant's motion *in limine*.[3]

In sum, Appellant has not presented us with any cause to disturb his judgments of sentence.

Judgments of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 01/27/2025

---

[3] Moreover, even if we were to conclude that the evidence was erroneously admitted, we would nonetheless find that any such error was harmless. Appellant's admission to having drugs in his home, his expression of his desire to cooperate to reduce his charges, and the actual discovery of fentanyl, cocaine, crack, and $6,000 following the two searches all overwhelmingly demonstrated Appellant's guilt as to the PWID and other drug-related charges in question. We are convinced beyond a reasonable doubt that the statements in question did not impact the jury's finding of guilt. **See**, **e.g.**, **Commonwealth v. Fitzpatrick**, 255 A.3d 452, 478 (Pa. 2021) (recounting that harmless error exists when, *inter alia*, the "body of uncontradicted evidence was so overwhelming that the erroneous admission of the evidence could not have impacted the verdict").